**J. E. WILLIAMS CONSTRUCTION COMPANY, a corporation, Appellant,**

v.

**James R. SPRADLING, Director, Department of Revenue of Missouri, Respondent.**

No. 59922.

Supreme Court of Missouri, en banc.

Sept. 12, 1977.

PER CURIAM.

This case, transferred to this court by our order after opinion by the Court of Appeals, St. Louis district, involves an assessment by the Department of Revenue of sales/use tax against a general contractor for materials purchased and used in the construction of a building for the city of Troy.

On June 15, 1972, an assessment of sales/use tax was made by the Missouri Department of Revenue (Department) against J. E. Williams Construction Company (Taxpayer or Appellant) in the amount of $75,195.75 (including interest). In due time the Taxpayer filed a petition for reassessment pursuant to § 144.240, RSMo 1969. A hearing was held before a hearing examiner at which the Taxpayer and the Department introduced evidence. Thereafter, in October, 1973, the Director of Revenue (Director) made and entered his final decision approving and upholding the assessment originally made by the Department in 1972. In due time the Taxpayer filed its petition for review in the circuit court of St. Louis county, pursuant to § 144.261, RSMo 1969. As indicated, the circuit court's judgment affirmed the decision of the Director and this appeal followed. We affirm.

In connection with his decision the Director made and filed findings of fact and conclusions of law, as follows:

### "FINDINGS OF FACT

"1. That the Assessment dated June 15, 1973, [sic] in the amount of $75,195.75 against Taxpayer is based upon materials used in the construction as described in a Contract (Exhibit F) between Taxpayer and 'Owner' as defined in Taxpayer's Exhibit F.

"2. That no Sales/Use Tax had been paid by Taxpayer on the purchase of said materials.

"3. That 'Owner', defined in said Contract (Taxpayer's Exhibit F), 'refers to Harper & Row, Publishers, Inc., tenants under a lease with the City of Troy, Missouri, except that as specifically indicated and where appropriate it may also include the City of Troy, landlord under said lease.'

"4. That the terms of said Contract required Taxpayer to furnish all indicated

Kenneth H. Suelthaus, St. Louis, for appellant

J. Mike Davis, Asst. Atty. Gen., Jefferson City, for respondent.

materials and labor for the construction of a Distribution Center in The City of Troy, Missouri, for the sum of $3,081,578.00.

"5. That said Contract was signed by Taxpayer's President on behalf of Taxpayer; and by the Secretary of Harper & Row, Publishers, Inc., on behalf of Harper & Row, Publishers, Inc.; and approved by Mayor Briggs on behalf of the City of Troy, Landlord.

"6. That certain subcontracts were entered into between Taxpayer and specified Subcontractors which required said Subcontractors to furnish all necessary labor, materials, etc., to complete said specified work.

"7. That pursuant to said subcontracts Taxpayer made payments for materials to said Subcontractors.

"8. That pursuant to the Contract between Taxpayer and 'Owner,' as defined in Exhibit F, Taxpayer received a separate payment drawn upon an account referred to as Troy, Missouri Construction Fund; and that said Fund was a deposit of monies received from the issuance of certain property bonds.

"9. That the City Treasurer of the City of Troy, Missouri, received a certain letter from the Director of Revenue dated August 13, 1969 (Exhibit J), which described a sales tax exempt purchase by a city.

"10. That no representatives of Taxpayer or the City of Troy, nor anyone on their behalf, were ever informed that the procedure for the payment of materials actually implemented was satisfactory to exempt such purchase of materials from Sales/Use Tax liability by officials of the Department of Revenue.

"CONCLUSIONS OF LAW

"1. That the City of Troy, Missouri, did not take title to or ownership of the materials furnished in the construction as described in Exhibit F. Article III Section 39(10) Mo.Const.1945 & Section 144.030, RSMo 1969.

"2. That the City of Troy was not obligated for the purchase of materials as defined or described in the Subcontracts between Taxpayer and the various Subcontractors.

"3. That the City of Troy by and through the 'Construction Fund' made payments to Taxpayer for materials furnished by Taxpayer in the completion of the construction as defined in the Contract (Exhibit F).

"4. That the Contract (Exhibit F) was not entered into by the City of Troy, Missouri.

"5. That Taxpayer was never appointed agent for the City of Troy, Missouri, for the purpose of purchasing materials for the completion of the work described in the Contract (Exhibit F).

"6. That representation by the officials of the Department of Revenue, if any, may not be used to estop the Department of Revenue to assert its legal position based on the law.

"7. That all material purchases included in the Assessment were subject to the imposition of Sales/Use Tax according to statute and the Taxpayer is liable therefor in the amount shown in the Assessment. Section 144.020, RSMo 1969; and *City of St. Louis v. Smith* (Mo.Sup.1937) [342 Mo. 317], 114 S.W.2d 1017."

We adopt parts of the Court of Appeals statement of the facts, as follows.

The appellant presented evidence consisting of testimony of Howard Briggs, Mayor of the City of Troy, of J. E. Williams, Jr., president of the appellant corporation, and documentary evidence which shall hereinafter be referred to. The thrust of their testimony was that early in 1968 the Chamber of Commerce of the City of Troy formed an Industrial Development Committee (later known as the Lincoln County Industrial Development Corporation) for the purpose of encouraging industry to locate in the Troy area. To take advantage of the provisions of Chapter 100, RSMo 1969 whereby municipalities might carry out projects for the industrial development thereof, a "community profile" was submitted to the Missouri Industrial Commis-

sion. Section 100.050, RSMo 1969. On April 24 or 25, 1968, Gilbert Keith of the Missouri Industrial Commission visited the City accompanied by Bryan Murphy of Harper & Row Publishers, Inc., and Gilbert Ross, of Ross & Company, a New York City engineering and architectural firm. Harper & Row (as the publishing company shall hereinafter be identified) was interested in establishing a midwest distribution center for its publications and this visit was for that purpose.

After numerous telephone calls and several visits to the City by representatives of Harper & Row, it was decided in July or August, 1968, that the publishing company would locate its distribution center in that city. It was agreed that the City would finance the project by issuing industrial revenue bonds pursuant to the authority of § 100.100, RSMo 1969, would own the project, and would lease the facilities to Harper & Row pursuant to the provisions of § 100.180, RSMo 1969. Accordingly, on September 6, 1968, a bond issue election was held pursuant to § 100.110, RSMo 1969 and was passed by a vote of approximately 900 to 6. The City was authorized to issue $4,900,000 industrial revenue bonds.

Subsequently over a period of several months, Mayor Briggs and various other members of the Committee made several trips to New York to iron out the terms of the lease so that the City would be the sole owner and have complete control of the building. At the time Mayor Briggs, acting under authority of the Board of Aldermen of Troy[1] as the one in charge of the bond issue, represented the City in all negotiations with respect to the lease with Harper & Row. During these negotiations, plans and specifications for the construction of the distribution center were drawn up by Ross & Company (as the engineering and architectural firm shall hereinafter be identified) and were then presented to Harper & Row and Mayor Briggs for approval. After the plans and specifications were ap-

proved the lease with Harper & Row was signed and invitations for bids were sent out to several construction companies. The bids submitted were opened in March, 1969, and the successful low bidder was J. E. Williams Construction Company, the appellant. This bid was in the amount of $3,155,-000.

Despite the fact appellant's bid was the low bid, it was learned that it was somewhere in the neighborhood of $200,000 in excess of the anticipated amount budgeted for construction of the distribution center. Gilbert Ross, of Ross & Company, Bryan Murphy, of Harper & Row, and Mayor Briggs met and discussed this development and in an effort to reduce this excess, Mayor Briggs suggested that perhaps the materials to be used in the construction of the building might be exempt from sales tax due to the fact the City was to be the owner of the distribution center. It was decided that Mayor Briggs should investigate this possibility so that an effort could be made to renegotiate the original bid by appellant.

Upon his return to the City the Mayor arranged a meeting at Jefferson City in the office of the Department of Revenue to explore the possible sales tax exemption of the materials going into the building of the distribution center building. He met with the Director of Research and counsel, authorized officials of the Department, sometime in April, 1969, and discussed how the project should proceed so that it would enjoy the tax exempt status of the City. According to the Mayor, these officials informed him that for the project to be tax exempt the City would have to make all payments for the material. The Mayor indicated to them that it would be impossible for the City to issue all of the individual checks because the City had only one secretary and Williams Company would thereby lose control of the billing. The Director of Research handed him a form letter on

1. Throughout the hearing all testimony of Mayor Briggs with respect to his authority to act for the Board of Aldermen of the City and the approval of the Board of his actions came in

without objection. At no time was any evidence of any ordinance or resolution passed by the Board of Aldermen ever produced or introduced into evidence.

which he had filled in the blank spaces. According to this completed form, in order for the City to be exempt from sales/use tax on the purchase of materials to be used in the project, the City had to "take title to, ownership of, and pay for all materials purchased with a *check or draft drawn on the treasury of the City of Troy, Mo.*" (Emphasis supplied.) This form letter bore no signature. According to the Mayor, if the city handled matters in conformity with the letter, a finalized letter would later be issued. Mayor Briggs forwarded copies of the form letter to Harper & Row and to appellant.

In the interim, appellant had been in the process of preparing a list of proposed modifications to its original bid. After Gilbert Ross, Bryan Murphy and Mayor Briggs reviewed the changes proposed in the original bid contract, appellant prepared a second list of modifications tallying a net reduction of $73,420 from the original bid. Included in this figure was a deduction of $32,252 for sales tax.

On April 22, 1969, a contract for construction of the distribution center for $3,081,578 was executed on an American Institute of Architects "Standard Form of Agreement Between Owner and Contractor." This contract identified the "Owner" as "Harper & Row, Publishers, Inc." but contained a "Note" which reads as follows:

"The term 'Owner' as used in the contract documents refers to Harper & Row, Publishers, Incorporated, tenants under a lease with the City of Troy, Missouri, except that as specifically indicated and where appropriate it may also include the City of Troy, landlord under said lease."

Work at the construction site commenced in May, 1969, and throughout the summer consisted primarily of grading and site preparation. On May 13, 1969, J. E. Williams, Jr. sent Mayor Briggs a memorandum setting out the mechanics for handling the purchase of material for the City of Troy and the letting of contracts for labor in connection with construction of the distribution center. Shortly after receiving this memorandum, Mayor Briggs wrote a letter (undated) to the Department of Revenue, marked for the attention of the Director of Research, outlining the way *the City* proposed to handle the purchase of materials.[2] In this letter Mayor Briggs

2. This letter on stationery bearing the letterhead of the City of Troy, is as follows:

"Director of Revenue
Sales Tax Division
Jefferson City, Mo.
Dear Sir:
    The following is an outline of the way the *City* of Troy proposes to handle the *purchase of materials* for the construction of the facility to be leased to Harper & Row, Publishers, Inc. (Emphasis supplied.)
SUBJECT:  Harper & Row
                Midwestern Distribution Center
                Troy, Missouri
                *SALES–USE TAX*
    We are herein outlining a proposed method for handling the purchasing of material for the City of Troy and the letting of contracts for all labor required in addition to that of our own forces to achieve construction of the Distribution Center to be leased from the City of Troy by Harper & Row, Publishers, Inc.
    In order to correlate the work and to keep paper work and correspondence within a reasonable limit yet still provide required records, we propose to receive monthly invoices from suppliers of material and from subcontractors for the entire project as follows:

All invoices will be to the City of Troy, Missouri, for the Harper & Row, Publishers, Inc., Distribution Center, Troy, Mo., with c.c. to the J. E. Williams Construction Company, Agent.
    Each invoice will show a breakdown, if pertinent, between labor, materials, and rental equipment and accompanying each invoice will be invoices for all material from suppliers, the sum of which will equal the amount shown for material of the invoice involved.
    All records will be open for audit by the Dept. of Revenue if they wish to audit sales tax exemptions. We will submit our monthly estimate covering the total cost of work completed, in break down form according to the outline attached, which you will note will show a total for materials and rental equipment and a total for labor.
    The City of Troy will issue to the J. E. Williams Construction Company a payment check to cover the total cost of labor, material, and rental equipment, and *we* in order to maintain control of the project *will make appropriate payments to suppliers and subcontractors.* (Emphasis added.)
    It is our understanding that when the proper procedure is established, the State will issue a letter to the City of Troy, exempting the city from paying Sales-Use Tax on the purchase of

adopted as his own the wording of the memorandum from Mr. Williams but did not identify it as such to the Department; the result being that the reader reasonably would understand that the City, "in order to maintain control of the project," would make "appropriate payments to suppliers and subcontractors" for materials.

In August of 1969, Mayor Briggs received a letter from John E. Schaffner, Director of Revenue, dated August 13, 1969, the text of which was identical with the form letter given him on the occasion of his initial visit with the two Department officials in the Department offices after his return from the discussions concerning how appellant's original bid could be reduced to come within the amount of the Industrial Bond Fund budgeted for construction of the distribution center. Because this letter did not authorize payment out of the Industrial Bond Fund, Mayor Briggs and Bryan Murphy again went to Jefferson City and discussed the method of billing and payment. Mayor Briggs came away from this meeting with the understanding that the project would be tax exempt so long as the material was sent to the job site and separately billed to and paid for by the City, through its fiscal agent, the Franklin National Bank, out of the Industrial Bond Fund.

Some weeks after this visit, the Department of Revenue issued to the "City Treasurer, City of Troy" another letter dated August 13, 1969,[3] identical in all respects to the form letter referred to previously and the initial letter of August 13, 1969, except that this letter authorized payment out of the Industrial Bond Fund of the City. A copy of the letter was forwarded by Mayor Briggs to appellant.

J. E. Williams, Jr., after receipt from Mayor Briggs of this latest letter from the Department of Revenue, arranged for a third meeting with the Department, and, accompanied by Mayor Briggs, went to Jefferson City where, according to his testimony, he outlined in detail the proposed procedure for billing to the Department officials in order to make sure that the procedure followed would result in the material purchases being tax exempt. When appellant's counsel questioned Mayor Briggs about what the Department officials had to say about this procedure, he replied: "They said that as long as these were complied with in this manner that there would be absolutely no problem and they would see no reason that it should ever be even questioned as to this thing being a strictly, a legitimate, sales use tax exempt project." Mr. Williams' testimony was that he had outlined the procedures which had been set out in the letter, apparently referring to the Director's last letter dated August 13, 1969, or to Mayor Briggs' undated letter to the Director, and that he believed that they had reached on oral understanding. He (Mr. Williams) said he believed when he came away from this conference that the procedures outlined with these officials were correct and were the procedures that should be followed to achieve a tax exemption for the purchases of materials going into construction of the distribution center.

---

material for this project and in turn permitting our Company and all other suppliers and subcontractors to purchase materials for the Project without payment of Sales-Use Tax.
Sincerely,
G. Howard Briggs
GHB: clm"

**3.** The body of this letter is as follows:

"Section 144.010–144.510, RSMo. 1959, Rule # 3, exempts from Sales/Use Tax the purchase or acquisition of tangible personal property or taxable services by a county or other political subdivision paid for out of the funds of such county or subdivision.

"The words 'Political subdivision' include townships, cities, towns, villages, school, road, drainage, sewer and levee districts, water districts, and all other public corporations or quasi public corporations having the power to tax. "This letter is authority for the City of Troy, Lincoln County, Missouri, to purchase any and all materials necessary to construct and equip the facility to be leased to Harper & Row, Publishers, Inc.

"It shall be understood that the City of Troy, Lincoln County, Missouri, in order to be exempt from Sales/Use Tax on purchase of materials to be used in the Harper & Row facilities, must take title to, ownership of, and pay for all materials purchased with a check or draft drawn on the Industrial Bond Fund of the City of Troy, Missouri."

The construction progressed and was substantially completed by June, 1972.

During the course of construction appellant entered into contracts with subcontractors and materialmen and each contract contained the following:

"*NOTE*: This is a sales-use tax exempt project. In order to conform with State requirements all invoices shall be made out to the City of Troy, Mo., for the Harper & Row Project, Inc., Midwestern Distribution Center, Troy, Mo., in care of the J. E. Williams Construction Company, Agent for the City of Troy, Mo. *No charges for sales tax shall be included with any invoices in connection with this contract.*"

Letters of Instruction were also sent by appellant to all subcontractors and material suppliers concerning payment procedures, as follows:

"Enclosed find a copy of a letter from the Department of Revenue, State of Missouri, signed by Mr. James E. Shaffner, dated August 13. The first three paragraphs of this letter are self-explanatory.

"In order for you to receive your monthly payment it will be necessary for you to submit your invoices as follows:

"Each invoice should show the total amount due for materials which together with your labor and overhead will be the amount of your monthly payment request.

"The total amount due for material shall be substantiated by material invoices from your suppliers, or your invoices for materials taken from your warehouse.

"SAMPLE BILLING FOR MATERIAL INVOICES:

"SOLD TO: City of Troy, Lincoln County, Missouri for the Harper & Row Publishers, Troy, Missouri, J. E. Williams Construction Company as AGENT 6490 Page Boulevard, St. Louis, Missouri, 63133."

From invoices submitted, some of which did not conform to requirements of the aforesaid letter of instruction or to the note in the aforesaid contracts with subcontractors and materialmen, appellant prepared a monthly estimated billing showing the total materials supplied by each subcontractor and materialman and also the total amount due each for material and labor. This estimated monthly billing was submitted to Ross & Company which would then forward same to Mayor Briggs for his approval. After approval, the billing was forwarded to the City's fiscal agent for the Industrial Bond Fund which issued two checks payable to appellant, one for labor and the other for material.

Upon receipt of these checks, appellant deposited them in its account and then issued its checks in payment for materials and labor due the subcontractors and materialmen, being one check for labor and one for material.

The evidence presented by the Director of Revenue in addition to the tax assessment consisted of testimony of the auditors who conducted the audit initiated after discovery of some sales invoices in the files of subcontractors of appellant on which no sales tax was paid. These two auditors were Francis Saali and Charles Mudd. Their testimony was that the audit was commenced sometime in February, 1972, and concluded in April, 1972. That appellant was fully cooperative. Their audit revealed that approximately $1,300,000 worth of materials had gone into the Harper & Row project and on that basis they arrived at their sales/use tax assessment. Mr. Saali, over appellant's hearsay objection, testified that shortly after the audit was commenced he contacted a superior officer in Jefferson City to determine whether appellant was the agent and that the City was not paying for the sales/use tax on the project. He testified that this official told him to continue the audit, and informed "us" about the discussions with the representatives from the City and Harper & Row and that one of the Department officials had said "that was not the way they informed the City of Troy to handle it and how it should have been paid by the City of Troy to the suppliers." Neither appellant nor the Department of Revenue called either of these officials as witnesses at the hearing.

We recognize that neither the circuit court nor this court may substitute its discretion for discretion vested in the Director and should not set aside his findings unless they are "unsupported by competent and substantial evidence upon the whole record"; or are "for any other reason, unauthorized by law"; or are "arbitrary, capricious or unreasonable"; or unless a finding "involves an abuse of discretion." *Stein v. State Tax Commission*, 379 S.W.2d 495, 498[3] (Mo.1964); *State ex rel. Kahler v. State Tax Commission*, 393 S.W.2d 460, 464[2] (Mo.1965); § 536.140, subsection 2, RSMo 1969. We also recognize that when the action being reviewed does not involve the exercise of discretion in light of the facts, but involves a question of law or "application * * * of law to the facts," the court may weigh the evidence and determine the facts, giving "due weight to the opportunity of the agency to observe the witnesses." Section 536.140, subsection 3, RSMo 1969; *Stephen & Stephen Properties v. State Tax Commission*, 499 S.W.2d 798, 802[1] (Mo.1973).

Appellant contends that the circuit court erred in affirming the decision of the Director, because: (1) the Department was, in equity, estopped to deny that the purchase of materials for use in construction of the distribution center building was exempt from sales/use taxes; and (2) the decision "was not supported by competent and substantial evidence upon the whole record, was based upon an improper application of the law to the facts and improper conclusions of law, and was for those reasons also arbitrary, capricious, and unauthorized by law."

Appellant, contending that the principle of equitable estoppel is applicable to governmental agencies charged with collecting taxes, argues that the Department is estopped in this case, because it (appellant) relied in good faith and to its detriment upon representations of authorized Department officials that the constitutional and statutory exemption of the City of Troy[4]

from payment of the sales/use tax would be accorded to the purchase of all materials to be used in the construction of the building to be leased to Harper & Row.

The evidence of representations by Department officials upon which appellant relies consists of and begins with the first letter of August 13 from the Department to the City Treasurer. It continues with (1) the letter, requested by Department officials, from Mayor Briggs to the Department in which he stated the procedures the City proposed to follow in connection with purchase of and payment for the materials so as to make these purchases those of the City, and therefore sales tax exempt; and (2) the second August 13 letter[5] from the Department to the City which, coming when it did, may be considered to be an approval of the procedures proposed by the City. In addition to this evidence there is the testimony of Mr. Williams and Mayor Briggs regarding discussions had with Department officials at meetings in Jefferson City. From all this evidence appellant concludes and contends the procedures followed by it are the procedures represented by Department officials to be the proper procedures to follow for the purchases of these materials to be exempt from sales/use taxes; that therefore the Department is estopped to claim that the purchases were not tax exempt.

We do not reach the ultimate question of whether the principle of equitable estoppel is applicable to governmental agencies charged with collecting sales/use taxes, because we determine that there was no estoppel under the facts presented.

One finding of fact (No. 10) by the Director crucial to the question of whether there was estoppel is, in substance, that neither appellant nor the City were informed by Department officials that payment for the materials by appellant direct to the material suppliers and subcontractors would be permissible under the tax exemption letter of August 13. In other words,

4. Mo.Const. Art. III, § 39(10) and § 144.030, subsection 1, RSMo 1969.

5. See footnote 3.

the Director found there was no representation by Department officials that it would be permissible under the tax exemption letter for appellant to pay the materialmen and subcontractors. There was competent and substantial evidence to support this finding.[6] Both August 13 letters from the Department to the City make it clear that the City "must take title to, ownership of, *and pay for* all materials * * * ." Mayor Briggs' undated letter to the Department stating the procedures the City proposed to follow recites that "we * * * [the City] will make appropriate payments to suppliers and subcontractors." There is nothing said in that letter from which the Department should understand that it was intended that appellant, instead of the City, would pay the suppliers and subcontractors for the materials. It was understood by at least one of the interested parties that Department officials would not approve the project as tax exempt if such procedure were followed. Mayor Briggs testified, at one point, that it had been his understanding "that the project would be tax-exempt so long as the material was sent to the job site and separately billed to and paid for by the City."

An examination of materials invoices found among the exhibits discloses that not all were billed to the City as purchaser. Despite the note in the subcontracts and instructions by letter to suppliers from appellant in order to make it appear that the materials had been sold to the City through appellant as its agent, some invoices billed the materials to another as purchaser (presumably a subcontractor) and many which did bill the City as purchaser showed that they were directed to Kremer-Hicks as agent, a person or persons no one even suggests was an agent of the City.

It is true that Mayor Briggs also testified that at the third meeting with Department officials held in late August or early September, 1969, he and Mr. Williams outlined, and these officials approved as exempt

from sales/use taxes, a procedure in which appellant would pay the suppliers and subcontractors for the materials. The Director could have but did not accept this version of what representations had been made by Department officials concerning the procedures to be followed. Instead, he accepted the version evidenced by Mayor Briggs' letter and the second August 13 letter from the Department, which version is also consistent with and supported by the first part of Mayor Briggs' testimony. We cannot say that the Director abused his discretion in accepting this version.

We conclude (1) that the procedures followed by appellant and the City in connection with payment for materials did not conform to those approved by the Department; (2) that the purchases of and payment for materials used in this project were by appellant and its subcontractors, and not by the City; (3) that for these reasons the purchases were subject to the sales/use tax. *City of St. Louis v. Smith*, 342 Mo. 317, 114 S.W.2d 1017, 1019[1, 2] (1937); *State ex rel. Thompson-Stearns-Roger v. Schaffner*, 489 S.W.2d 207 (Mo.1973).

The judgment is affirmed.

All concur.

---

6. In this connection, the Director did not need to consider (if he did) the so-called hearsay testimony of the Department auditors; there is sufficient competent and substantial evidence without this testimony.