BECKER ELECTRIC COMPANY, INC., Appellant,

v.

DIRECTOR OF REVENUE, State of Missouri, Respondent.

No. 69485.

Supreme Court of Missouri, En Banc.

April 19, 1988.

Rochelle Kaskowitz, St. Louis, for appellant.

William L. Webster, Atty. Gen., Richard L. Wieler, Asst. Atty. Gen., Jefferson City, for respondent.

Shirley Ward Keeler, Kansas City, amicus curiae, for Kansas City, Missouri, School Dist.

W.B. Tichenor, Jefferson City, for Missouri Baptist Convention.

Harold L. Fridkin, Charles H. Stitt, Kansas City, for Missouri Hosp. Ass'n.

Gad Smith, Sandra L. Schermerhorn, Kansas City, for Builders Ass'n of Kansas City.

Juan D. Keller, St. Louis, for Independent Colleges and Universities of Missouri.

Amy R. Hinderer, Rhonda A. O'Brien, St. Louis, for Bi–State Development Agency of Missouri–Illinois Metropolitan Dist.

Stephen L. Ukman, St. Louis, for National Elec. Contractors Assn., Inc. St. Louis Chapter and Kansas City Chapter and Mechanical Contractors Assn. of St. Louis, Mo.

DONNELLY, Judge.

This is an appeal from a final decision of the Administrative Hearing Commission involving the construction of the revenue laws of the State of Missouri. This Court has exclusive jurisdiction. *Mo. Const. art. V, § 3.*

The facts are not in dispute. On January 8, 1982, Hankins Construction Company entered into a general contract with the St. Louis Housing Authority to renovate the Webbe Elderly Housing Project, which was situated on land owned by the Housing Authority. Appellant Becker Electric Company, Inc., subcontracted with Hankins on January 12, 1982, to renovate and remodel a certain building at the Webbe Project for a lump sum payment of $490,000. The subcontract required appellant to pay for all materials furnished and work and labor performed under the subcontract and to make good, at appellant's own expense, any defect in materials or workmanship. The estimated cost of materials and associated sales and use taxes were figured into the $490,000 subcontract price.

The Housing Authority was, and still is, exempt from state sales and use taxes.[1] The Housing Authority issued a tax exemption certificate covering purchases associated with the Webbe project, and Hankins ordered all subcontractors to purchase materials in the name of St. Louis Housing Authority, in care of the subcontractor. Accordingly, appellant ordered all construction materials necessary to fulfill the subcontract in the name of "St. Louis Housing Authority c/o Becker Electric." The Housing Authority directly paid for all purchases and the $490,000 lump sum payment was reduced in an amount equal to the sum of the tax-exempt purchases and any associated tax savings. No sales or use taxes were paid on such purchases.

On May 10, 1983, the Housing Authority and Hankins incorporated an addendum into the general contract which allowed the Housing Authority to pay suppliers directly for any purchases of materials for the Webbe project. The Housing Authority's payments to Hankins were reduced in an amount equal to the purchase price plus tax savings.

In September 1983, the Department of Revenue conducted a sales and use tax audit of appellant and issued an assess-

---

1. On September 27, 1976, the Department of Revenue issued a sales and use tax exemption to the Housing Authority. The exemption letter cites sections 144.040 and 144.615, RSMo 1969, which allow sales and use tax exemptions on sales made by or to nonprofit civic organizations solely in their civic or charitable functions. However, the letter also states the exemption is based on the Housing Authority being a political subdivision or governmental instrumentality. It is likely the Housing Authority qualifies for exemption on either of these grounds. In any case, the Housing Authority's tax-exempt status is not in question.

ment the following February demanding $7,982.56 for sales tax, penalty and interest, and $108.19 for use tax, penalty and interest. The auditor's report stated:

> None [sic] payment of tax on material billed to Becker Electric.
>
> Findings were on contracts where work was done for St. Louis Housing Authority, but billed from vendor to Becker Electric.
>
> St. Louis Housing Authority paid for material using exemption letter. *Note* invoices show billing to Becker, not St. Louis Housing Authority.

Appellant filed a timely complaint, and the Administrative Hearing Commission upheld the assessment.

On review, "[a] decision of the administrative hearing commission shall be upheld when authorized by law and supported by competent and substantial evidence upon the whole record, [unless the result is] clearly contrary to ... the reasonable expectations of the general assembly...." Section 621.193, RSMo 1986. Since we find that the Commission's decision was not authorized by law, we reverse.

## I.

Section 144.020(1), RSMo 1978, imposes a sales tax on

> all sellers for the privilege of engaging in the business of selling tangible personal property or rendering taxable service at retail in this state. The rate of tax shall be as follows:
>
> (1) Upon every retail sale in this state of tangible personal property a tax equivalent to three percent of the purchase price paid or charged....

The taxable event is a retail sale, which is defined as "any transfer made by any person ... of the ownership of, or title to, tangible personal property to the purchaser, for use or consumption and not for resale ..., for a valuable considera-

tion...." Section 144.010(1)(8), RSMo 1978. Collection and submission of the sales tax is generally the responsibility of the seller, but "when a purchaser has purchased tangible personal property or services sales tax free under a claim of exemption that is found to be improper, the director of revenue may collect the proper amount of tax, interest and penalty from the purchaser directly." Section 144.-210(1), RSMo 1978.

The Compensating Use Tax Law, sections 144.600–.745, RSMo 1978, imposes a complementary and equivalent tax on out-of-state purchases that would have been subject to sales tax had the purchases occurred in Missouri.

In concluding that appellant was liable for sales and use taxes on the construction materials, the Administrative Hearing Commission relied heavily on the settled proposition that contractors and subcontractors are the consumers of materials purchased and used in the fulfillment of a construction contract and are therefore liable for sales and use taxes. *See Overland Steel, Inc. v. Director of Revenue,* 647 S.W.2d 535 (Mo. banc 1983); *J.E. Williams Construction Co. v. Spradling,* 555 S.W. 2d 16 (Mo. banc 1977); *State ex rel. Thompson–Stearns–Roger v. Schaffner,* 489 S.W.2d 207 (Mo.1973); *City of St. Louis v. Smith,* 342 Mo. 317, 114 S.W.2d 1017 (1937); 12 C.S.R. 10–3.028.[2] However, this proposition developed in response to the argument that construction materials purchased by contractors and subcontractors are resold upon completion of the construction project and are therefore not subject to sales tax. *See City of St. Louis v. Smith,* 342 Mo. at 320–321, 114 S.W.2d at 1019. None of the cited cases involved the situation found here, where a tax-exempt owner of the real property paid suppliers *directly* for the construction materials.[3]

---

**2.** 12 C.S.R. 10–3.028 reads, in part:
Contractors are considered to be the final purchasers and consumers of the materials and supplies which are used in fulfilling a construction contract and which enter into and become part of the completed project. As a consequence, persons selling materials and

supplies to contractors are subject to sales tax on the gross receipts from all such sales.

**3.** The Administrative Hearing Commission cited the following examples to the application of 12 C.S.R. 10–3.028:

Therefore, the central issue on appeal is whether a contractor or subcontractor who does not pay for construction materials used to fulfill a construction project can nevertheless be considered a purchaser of the construction materials. Appellant argues that the Housing Authority, due to its direct payment for the construction materials, was the purchaser and therefore the sales were made pursuant to a valid exemption. If appellant was the purchaser, however, then the Housing Authority's exemption would not apply, and appellant is liable for the tax unless appellant qualifies for an exemption other than that of the Housing Authority.

## II.

■ As a preliminary matter, it must be recognized that revenue laws are to be construed strictly against the taxing authority in favor of the taxpayer. *E.g., Goldberg v. Administrative Hearing Comm'n*, 609 S.W.2d 140, 144 (Mo. banc 1980). Respondent argues that this case involves construction of an exemption and thus requires strict construction against the taxpayer. *Farm and Home Savings Ass'n v. Spradling*, 538 S.W.2d 313 (Mo. 1976). However, the question of exemption will arise only if we find that appellant was the purchaser of the construction materials and was thus subject to sales and use taxes. Therefore, in determining whether appellant was the purchaser, the sales and use tax laws will be strictly construed against respondent.

## III.

Ordinarily, the word purchaser has two well defined meanings. It may be employed in the broad sense to include anyone who obtains title otherwise than by descent and distribution. In its more commonly used and ordinarily accepted sense it refers to a vendee or buyer who has purchased property for a valuable consideration.

*Smith v. Enochs*, 233 F.Supp. 925, 927 (S.D.Miss.1964), *aff'd*, 359 F.2d 924 (5th Cir.1966).

The first step in determining if appellant was the purchaser is to examine the statutes in an effort to determine legislative intent. "Purchaser," for purposes of the Sales Tax Laws, "means a person who purchases tangible personal property" subject to sales tax. Section 144.010(1)(7), RSMo 1978. The Compensating Use Tax Law defines "purchaser" as "any person who is the recipient for a valuable consideration of any sale of tangible personal property acquired for use, storage or consumption in this state...." Section 144.605(4), RSMo 1978. "Purchase" is not defined in the sales tax laws but is defined under the Compensating Use Tax Law as "the acquisition of the ownership of, or title to, tangible personal property...." Section 144.-605(3), RSMo 1978. As mentioned, "sale at retail" is defined as "any transfer made by any person ... of the ownership of, or title to, tangible personal property to the purchaser, for use or consumption and not for resale ..., for a valuable consideration...." Section 144.010(1)(8), RSMo 1978. From these definitions it is unclear whether the legislature intended for an exchange of valuable consideration to be an element of the term "purchaser."

Article III, section 39(10), of the Missouri Constitution prohibits the General Assembly from imposing "a use or sales tax upon the use, purchase or acquisition of property paid for out of the funds of any county or other political subdivision." This emphasizes the importance placed on the party

---

(5) Example 1: Beaver Construction Company enters into an agreement to erect an elementary school for a school district. *The company purchases supplies and materials* to erect such building in the fulfillment of the contract. Sellers of materials and supplies to the contractor, Beaver Construction, are subject to the sales tax since Beaver Construction is the consumer of such supplies and materials.

(6) Example 2: *Beaver Construction Company purchases construction materials* to construct a silo on real property ... for a lump-sum contract price. All suppliers to Beaver Construction are subject to sales tax on the materials incorporated into the silo.
(Emphasis added). Both examples involve situations where the contractor is assumed to purchase the materials and are therefore inapplicable to this case.

directly paying the purchase price in determining the applicability of a sales or use tax.

This Court addressed the definition of purchaser in relation to sales and use taxes in *State ex rel. Thompson–Stearns–Roger v. Schaffner*, 489 S.W.2d at 207. Thompson–Stearns–Roger was a cost-plus-a-fixed-fee general contractor on a federal government project in Missouri. During the course of the project, the contractor ordered, using government forms, a variety of construction materials and supplies. The contractor paid suppliers directly, including sales and use taxes, and was usually reimbursed within a few days. The contractor subsequently sought a refund of the taxes on the grounds that the United States, a tax-exempt entity, was the true purchaser of the materials. This argument was predicated on the fact that the materials were shipped directly to the government job site, where title to the goods transferred directly from the vendor to the United States. In concluding that the contractor was the purchaser, this Court stated:

> There is no question that the General Assembly in enacting the sales tax law intended to place the burden of the tax on the person paying the purchase price. In defining a "purchaser" as the person to whom either "ownership" or "title" is transferred, the legislature must have intended to include not only transactions in which the person who pays the purchase price is the recipient of the legal title to the property, but also to include the myriad of transactions in which the purchase price is paid by one who does not receive technical legal title but who exercises dominion over the property such as by directing who the recipient of such title shall be.

*Id.* at 215 (citations omitted). This language supports a conclusion that a "purchaser" is the person who pays the purchase price and exercises some dominion over the purchased property.

Both parties cite *J.E. Williams Construction Co. v. Spradling*, 555 S.W.2d at 16. In *J.E. Williams*, a tax-exempt city and a general contractor contacted the Department of Revenue to determine how purchases for a city construction project could be structured so as to be exempt from sales and use taxes. The Department notified the contractor and the city that the purchases would be exempt only if the city would "take title to, ownership of, and pay for all materials purchased with a check or draft drawn on the Industrial Bond Fund of the [city]." *Id.* at 21 n. 3. The purchases, however, were paid for directly by the contractor and subcontractors, who were then reimbursed by the city on a monthly basis. The contractor challenged the assessment of sales tax on an equitable estoppel theory. While *J.E. Williams* gives some indication of the importance placed on the person directly paying the purchase price in determining the applicability of an exemption, the case was clearly decided on equitable estoppel grounds and is thus inapposite.[4]

■ We hold that a purchaser, for purposes of the sales and use taxes, is the person who acquires title to, or ownership of, tangible personal property, or to whom is rendered services, in exchange for a valuable consideration.

## IV.

■ Applying the definition of purchaser to the facts before us, we hold that appellant was not the purchaser of the construction materials. Therefore, appellant is not liable for sales or use taxes on purchases associated with the Webbe project.

The first part of the definition requires the purchaser to acquire title to, or ownership of, tangible personal property.

The term "ownership" cannot be said to have a fixed, definite meaning. Its meaning varies in the context in which the term is used. Used here, with the word "title," the legislative intent must have been to denominate some interest or right other than the so-called "bundle

---

4. In its reply brief, appellant raises an equitable estoppel argument. Since we reverse the Commission's holding on other grounds, we refrain from addressing this issue.

of rights" encompassed by the term "title." According to Black's New Dictionary (Rev. 4th Ed.), the word "Owner" "is not infrequently used to describe one who has dominion or control over a thing, the title to which is in another." *State ex rel. Thompson–Stearns–Roger v. Schaffner*, 489 S.W.2d at 215 (citations omitted). Here, appellant was free to determine what materials needed to be ordered and in what amounts. Appellant submitted the orders to the materialmen and inspected the materials upon delivery to the job site. In addition, appellant had discretion in the use of the materials in the completion of the project. These factors likely constitute sufficient dominion and control over the materials for appellant to be considered a purchaser.

However, appellant did not pay for any construction materials. All orders were made in the name of "St. Louis Housing Authority c/o Becker Electric." Although first sent to appellant for approval, the bills were forwarded to the Housing Authority, through Hankins, for direct payment. The Housing Authority then paid the bills out of its own funds. Appellant did not part with valuable consideration and is not the purchaser.

Respondent argues that the subcontract requirement that appellant furnish and pay for all materials necessary to complete the project compels a conclusion that appellant was the purchaser. This argument ignores the course of performance of the parties to the contracts. By requesting appellant to order all materials in the name of the Housing Authority, Hankins and the Housing Authority effectively waived appellant's obligation to furnish materials at its own expense. *See Julian v. Kiefer*, 382 S.W.2d 723 (Mo.App.1964). Appellant's compliance served to modify the subcontract. *See Smith v. Githens*, 271 S.W.2d 374 (Mo.App.1954).

Respondent argues that the procedure used here for purchasing construction materials is merely a scheme to circumvent payment of sales and use taxes. Certainly it cannot be denied that the purchases in this case would have been exempt had the Housing Authority ordered and paid for the materials prior to hiring Hankins to commence the project. The procedure followed here merely reflects the economic realities of the situation; the Housing Authority lacks the expertise to purchase such materials on its own, and it is doubtful the exemption would ever be invoked if, as a prerequisite, the Housing Authority were required to perform all of the purchasing functions. Furthermore, neither appellant nor Hankins benefited from this procedure. The net result is a tax exemption for the Housing Authority, a result consistent with the reasonable expectations of the General Assembly. *See* section 144.030(2)(19), RSMo 1986.

Both parties raise arguments concerning the existence of an agency relationship between appellant and the Housing Authority. Regardless of the nature of the relationship, appellant did not take ownership of or title to the construction materials in exchange for a valuable consideration.

The decision of the Administrative Hearing Commission is reversed.

All concur.