HSBC BANK USA, NATIONAL ASSO-CIATION, as Trustee for Certificate Holders of Deutsche Alt–A Securities Mortgage Loan Trust—Series 2007–1 Mortgage Pass Through Certificates, Respondents,

v.

Paul WEBER, et al., Appellants.

No. WD 74227.

Missouri Court of Appeals, Western District.

April 30, 2013.

Ray E. Sousley, Gregory E. Eufinger, Kansas City, MO, for appellant.

Richard L. Martin, Kansas City, MO, for respondent.

Before Division Three: ALOK AHUJA, P.J., and VICTOR HOWARD and GARY D. WITT, JJ.

ALOK AHUJA, Judge.

Paul Weber, Letha Weber, and Susie Q Properties, LLC appeal from a judgment of the Circuit Court of Clay County, which declared a Notice the Appellants had recorded in the land records to be invalid because it constituted a nonconsensual common law lien under § 428.105.1(3).[1] Because the owner of the real estate at issue consented to the Notice, we hold that it was not a nonconsensual common law lien subject to expungement under § 428.125.2. The judgment of the circuit court is accordingly reversed.

**Factual Background**

In April 2007, Paul Weber purchased real property containing eight duplexes on North Topping Avenue in Kansas City. Each duplex can be accessed only from a private road which connects the properties to North Topping Avenue. A portion of the private road traverses the property on which each duplex is located. An ease-ment granting the owner of each property ingress and egress over the private road was recorded in 1980. The easement was to run with the land for the benefit of future owners of the duplex properties. In 1984, a maintenance agreement was recorded, which provided for each duplex owner to be responsible for a portion of the cost of maintaining the private road.

Weber financed his purchase of the properties using sixteen different loans, two for each property, secured by first and second deeds of trust on each property. After purchase, Weber transferred all of his interest in the properties to Susie Q, a Kansas limited liability company of which Weber is the primary owner. The notes and deeds of trust, however, remained in Weber's name.

This action concerns three of the duplex properties, known as 5010–5012, 5014–5016, and 5026–5028 North Topping Avenue (collectively, the "Foreclosed Properties"). At some point prior to July 26, 2009, Weber defaulted on payment of the loans secured by the deeds of trust on the Foreclosed Properties, and the lender commenced the pre-foreclosure process.

On July 26, 2009, while the loans on the Foreclosed Properties were in default, Weber and Susie Q (acting through member Letha Weber) executed a document captioned "Notice of Claim of Interest in Land Connection Agreement." The Notice purported to apply to all eight of the duplex properties. The Notice specified that, in the event any of the properties was acquired in a transaction "where the former owner has not assigned, transferred, or sold its properties Agreement [sic]," the new owner would have to pay Susie Q a connection fee of $250,000 per duplex property to access the private road. The

---

1. Unless otherwise indicated, statutory citations refer to the 2000 edition of the Revised Statutes of Missouri, as updated through the 2012 Cumulative Supplement.

Notice also stated that the owners of the duplex properties would be assessed a use and access fee of $250 per month, per driveway.

On August 1, 2009, Weber sent a letter to the lender on the Foreclosed Properties, suggesting that the lender agree to a short sale of all eight properties as a lot, at an auction to be held on October 2, 2009. The letter advised the lender that

> [t]he properties cannot be broken apart and sold individually without creating serious legal ramifications subject to the rights of accessibility, connection, and monthly costs for individual owner [sic]. As shown by the accompanying Clay County Parcel Map these properties are joined by a private road owned by Susie Q Properties, LLC.... If [lender] forecloses on said properties, all legal means will be pursued to prevent trespassing on private property to gain access to the foreclosed properties. Therefore, enclosed is [the Notice], filed with the Clay County Recorder of Deeds, that outlines the connection costs and monthly maintenance fees of individual property owners to access this private road. These fees will be assess [sic] to [lender] upon foreclosure of any properties that utilize the private road.

The Foreclosed Properties were apparently sold to HSBC, in its capacity as "Trustee for holders of Deutsche Alt–A Securities Mortgage Loan Trust, Series 2007–1 Mortgage Passthrough Certificates," at a public foreclosure sale held on December 18, 2009.

On May 4, 2010, HSBC filed a petition in the circuit court under § 428.120, alleging that the Notice was a nonconsensual common law lien, and requesting that the cir-

cuit court order the Appellants to appear and show cause why the Notice should not be declared null and void and expunged from the record. Following a bench trial, the circuit court entered judgment in favor of HSBC on July 5, 2011. The judgment found the Notice to be a nonconsensual common law lien, declared it void *ab initio*, and ordered that it be expunged from the record. This appeal follows.

## Standard of Review

The judgment of the trial court following a bench trial will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Statutory interpretation is a legal question which we review *de novo*. *Spradling v. SSM Health Care St. Louis*, 313 S.W.3d 683, 686 (Mo. banc 2010).

## Analysis

Appellants challenge the circuit court's judgment on multiple grounds. We need address only one of their arguments, however: their claim that the Notice cannot be a nonconsensual common law lien, because the owners of the Foreclosed Properties (Weber and/or Susie Q) consented to it. Because we agree with Appellants on this point, and because HSBC failed to allege that the Notice was invalid on any other basis, we reverse the circuit court's judgment, without addressing Appellants' other arguments.[2]

Under § 428.105.1(3), a "nonconsensual common law lien" is defined as

---

**2.** Besides their claim that the Notice was not a nonconsensual common law lien because the property owners consented to it, Appellants also argued that the Notice was not a

"lien" within the meaning of the relevant statutes, and that HSBC had not established that it was the real party in interest entitled to seek invalidation of the Notice.

a document that purports to assert a lien against the assets, real or personal, of any person and that, regardless of any self description:

(a) Is not expressly provided for by a specific state or federal statute;

(b) Does not depend upon the consent of the owner of the property affected or the existence of a contract for its existence; and

(c) Is not an equitable or constructive lien imposed by a state or federal court of competent jurisdiction.

The statutes provide that a governmental filing officer may reject a nonconsensual common law lien for filing or recording. § 428.110.1. If a nonconsensual common law lien is accepted for filing or recording, § 428.110.2 provides that a filing officer "shall accept for filing a sworn notice of invalid lien ... signed and submitted by the person against whom such lien was filed or such person's attorney."

The statutes also provide judicial remedies to persons holding interests in properties subject to a recorded nonconsensual common law lien. Thus, § 428.120 provides:

Any person who has real or personal property or an interest therein, which is subject to a recorded nonconsensual common law lien, who believes such lien is invalid, may petition the circuit court of the county in which the lien has been recorded or filed for an order, which may be granted ex parte, directing the lien claimant to appear before the court

within ten business days following the date of service of the petition and order on the lien claimant, and show cause, if any, why the claim of lien should not be declared void and other relief provided for by section 428.125 should not be granted. The petition shall state the grounds upon which relief is requested, and shall be supported by the affidavit of the petitioner or the petitioner's attorney setting forth a concise statement of the facts upon which the claim for relief is based.

Section 428.125.1 provides that, if the lien claimant fails to appear in response to a show cause order, the lien will be declared invalid, with the lien claimant ordered to pay the other parties' costs, including attorney's fees. Section 428.125.2 also provides that,

If, following a hearing on the matter, the court determines that the document at issue is a nonconsensual common law lien, the court shall issue an order declaring the lien void ab initio, releasing the lien and awarding costs and reasonable attorney's fees to the prevailing party.

Under § 428.135, a person filing a nonconsensual common-law lien "shall be liable to the damaged party for actual damages or five thousand dollars, whichever is greater," in addition to the filer's liability for costs and attorney's fees.[3] In addition, §§ 575.130.4 and .5 make it a class B misdemeanor for any person to file a nonconsensual common law lien.[4]

---

3. The relevant statutes also provide judicial remedies for lien claimants whose lien filings are wrongfully denied recording or filing by the relevant government agency, or where the lien claimant prevails against a claim that its lien filings constitute invalid nonconsensual common law liens. *See* §§ 428.115, 428.125.3, 428.135(2).

4. We note that numerous other states have enacted statutes similar to the Missouri provisions addressing nonconsensual common law liens. *See generally* Jake D. McGrady, *Lien on Me: The Failure of Idaho's Noncensual Common Law Lien Statute*, 45 IDAHO L.REV. 191, 215–19 (2008). The cited article describes the types of abuses which led to the adoption of these statutes. *See id.* at 193–97, 204–07; *see also* Mark Pitcavage, *Paper Terrorism's*

A lien is not a "nonconsensual common law lien" under § 428.105.1(3)(b) if it "depend[s] upon the consent of the owner of the property affected ... for its existence." In this case, both Paul Weber, individually, and Susie Q Properties, LLC, executed the Notice. Although Weber was in default on the loans secured by the Foreclosed Properties when the Notice was executed, only Weber and/or Susie Q were the owners of fee simple title to the properties at the time.

Because the owners of the properties affected by the Notice consented to it, the Notice was not a "nonconsensual common law lien" within the meaning of § 428.105.1(3)(b). HSBC argues that the Notice *was* nonconsensual, because the holders of the deeds of trust held "interests" in the Foreclosed Properties at the time the Notice was entered, the Notice affected those interests, and the deed-of-trust holders did not consent to the Notice. We conclude, however, that the fact that HSBC or other entities held deeds of trust against the Foreclosed Properties did not render those entities "owners" of the Foreclosed Properties at the time the Notice was executed. Therefore, the consent of those entities was not necessary to prevent the Notice from being labeled a "nonconsensual common law lien."

The Missouri Supreme Court has stated that "[t]he term 'ownership' cannot be said to have a fixed, definite meaning. Its meaning varies in the context in which the term is used." *Becker Elec. Co. v. Dir. of Revenue*, 749 S.W.2d 403, 407 (Mo. banc 1988) (quoting *State ex rel. Thompson–Stearns–Roger v. Schaffner*, 489 S.W.2d 207, 215 (Mo.1973)). While the meaning of "ownership" may be variable, the Supreme Court has repeatedly refused to find that beneficiaries or trustees under deeds of trust constitute "owners" of real property. For example, in *R.L. Sweet Lumber Co. v. E.L. Lane, Inc.*, 513 S.W.2d 365 (Mo. banc 1974), the Court held that the holder of a deed of trust on real property was not an "owner" of the property within the meaning of § 429.100, which provides that property "owners" must receive ten-day notice of a party's intention to file a mechanic's lien against the property. The Court explained:

> The nature of the title conveyed under a deed of trust was well set forth in *City of St. Louis v. Koch*, 156 S.W.2d 1, 5 (3, 4) (Mo.App.1941): A deed of trust in the nature of a mortgage given on land to secure the payment of a debt is held to be a lien and nothing more.... So viewed, it is neither an estate in land, nor a right to any beneficial interest therein. It is neither *jus in re* nor *jus ad rem*. It is merely the right to have the debt, if not otherwise paid, satisfied out of the land. The debt is the essence of the mortgage, the lien a mere incident that follows it as a shadow. We must hold, therefore, that appellant's ownership of the deed of trust on the property did not constitute him the owner of the title to the property. He had a lien and nothing more, which gave him only the right to have the debt, if not otherwise paid, satisfied out of the land.

*Id.* at 368 (other citations and internal quotation marks omitted).

More recently, the Supreme Court held that a lender which was the beneficiary of a deed of trust was not an "owner" subject to an obligation to reimburse a tax-sale

---

*Forgotten Victims: The Use of Bogus Liens against Private Individuals and Businesses* (last modified June 29, 1998), available at http://archive.adl.org/mwd/privlien.asp (last visited April 15, 2013). For an example of one of these statutes in operation, *see Browning v. Griffin*, 140 Idaho 598, 97 P.3d 465 (App.2004).

purchaser for its purchase price under § 140.330.2. The Court explained:

> Despite language in a deed of trust purporting to transfer title to the trustee, execution of a deed of trust only creates a lien. It has been repeatedly held that a deed of trust is merely a security for a debt under which the holder of the fee simple title continues as owner of the land.

*M & P Enterps., Inc. v. Transam. Fin. Servs.*, 944 S.W.2d 154, 164 (Mo. banc 1997); *see also Bankers Union Life Ins. Co. v. Floy Hanks & Mistwood, Inc.*, 654 S.W.2d 888, 889 (Mo. banc 1983) (construing § 140.150, which provides for notice of tax sale to property "owners"; "It is well-established in Missouri that the deed of trust on the real estate involved here was merely security for the debt, and that Jagar was the true owner of the real estate prior to the tax sale."); *Deer Run Prop. Owners Ass'n v. Bedell*, 52 S.W.3d 14, 19 (Mo.App. S.D.2001) ("The existence of deeds of trust and mortgages against NLDC does not change a finding that NLDC was the sole owner of the property.").

The general rule that deed-of-trust holders are not property "owners" applies with full force to § 428.105.1(3)(b). First, § 428.105.1(3)(b) plainly uses the term "owner" to refer to the party or parties who may, by contract or consent, authorize the creation of a lien against a piece of property—*i.e.*, the person or persons who can convey interests in the property. The holder of a deed of trust is not generally understood to be a party who can convey interests in real property, however. Moreover, § 428.120 authorizes "[a]ny person who has real or personal property *or an interest therein*" to commence an action to have a nonconsensual common law lien declared invalid. By referring separately to persons who "ha[ve]" real property, and then to persons who have "an interest therein," the General Assembly plainly distinguished between property "owners," and other persons who have "an interest" in particularly properties. While both "owners" and "interest-holders" are authorized by § 428.120 to file suit to challenge a nonconsensual common law lien, only the consent of the property's "owner" is necessary to prevent a particular lien from being considered nonconsensual under § 428.105.1(3)(b).

Therefore, the holders of deeds of trust against the Foreclosed Properties were not "owners" of those properties within the meaning of § 428.105.1(3)(b), and their failure to agree to the Notice did not render it a nonconsensual common law lien.

HSBC suggested in its briefing and oral argument that it should be considered an "owner," because the "property affected" by the Notice was not (only) the Foreclosed Properties, but the deeds of trust against the properties. We disagree. The relevant "property affected" by a nonconsensual common law lien is the property *against which* a lien is asserted. § 428.105.1(3). To the extent that the Notice can in fact be considered a "lien" (an issue we do not decide, *see* note 2, *supra* ), it seeks to impose a charge or obligation only against the Foreclosed Properties themselves, not against the deeds of trust on the properties. While the Notice may well affect the value and enforceability of the deeds of trust secured by the Foreclosed Properties, it has this effect due to its operation on the Foreclosed Properties; it does not seek to encumber the deeds of trust directly.

HSBC's petition recognizes as much: it asserts that the Foreclosed Properties are "[t]he real estate, which is the subject of this action"; and that the Notice "was recorded by Defendants *against the real estate.*" The petition alleges that HSBC is

entitled to prosecute the action because "[l]egal title to [the Foreclosed Properties] has been vested to Plaintiff." Later, the petition alleges that the Notice "was recorded *against the above described real estate* and now clouds the title to said real estate," and "purports to assert some nonsensical and ill-described interest or lien *on the real estate.*" HSBC's petition makes clear that, to the extent the Notice constitutes a "lien" at all, it constitutes a lien *against the Foreclosed Properties;* the petition effectively acknowledges that the Notice does not assert a lien against the deeds of trust.

We recognize that the Notice is unusual, and was evidently executed and recorded to give Appellants negotiating leverage in connection with the pre-foreclosure process which was then underway. We also recognize that the Notice may be subject to legal challenge on numerous grounds.[5] But the only basis on which HSBC challenged the Notice in this action was its claim that the Notice constituted an unlawful nonconsensual common law lien. That argument fails for the reasons explained above; we take no position concerning the Notice's validity or enforceability on any other, unasserted basis.

## Conclusion

The judgment of the circuit court is reversed.

All concur.

---

**5.** For example, the recording of the Notice may have violated Weber's or Susie Q's obligations under the notes or deeds of trust; the Notice may fail for lack of consideration; it may have been extinguished by the foreclosure on the Foreclosed Properties (on which the private road apparently runs, at least in part); and the Notice may constitute an unenforceable transfer fee covenant within the meaning of § 442.558.2. Other grounds to challenge the Notice undoubtedly exist.