**STATE ex rel. THOMPSON–STEARNS–
ROGER, a joint venture, Appellant,**

v.

**James E. SCHAFFNER, Director of Revenue
of the State of Missouri, Respondent.**

**STATE ex rel. MASON–RUST, a joint
venture, Appellant,**

v.

**James E. SCHAFFNER, Director of Revenue
of the State of Missouri, Respondent.**

Nos. 56801, 56802.

Supreme Court of Missouri,
Division No. 1.

Jan. 8, 1973.

Lewis, Rice, Tucker, Allen & Chubb, Arthur R. Tucker, St. Louis, Carson, Inglish, Monaco & Coil, Cullen Coil, Jefferson City, for appellant.

John C. Danforth, Atty. Gen., Walter W. Nowotny, Jr., Asst. Atty. Gen., Jefferson City, for respondent.

WELBORN, Commissioner.

Consolidated appeals from denial of relief in mandamus actions to compel approval of claims for refund of sales and use taxes. The trial court quashed the alternative writs and relators appealed.

In 1967, Thompson-Stearns-Roger, a joint venture consisting of Thompson Chemicals Company and Stearns-Roger Corporation, entered into a "Cost Plus-A-Fixed-Fee Architect-Engineer-Construction-Management Services Contract" with the United States of America pursuant to which Thompson-Stearns would rehabilitate, convert and construct facilities at the Weldon Springs Facility, St. Charles County, Missouri, for the manufacture of a defoliant commonly known as "Herbicide, Orange." In carrying out the contract, Thompson-Stearns, from January, 1968 to May, 1969, purchased a variety of tools, materials, construction supplies and other tangible personal property. An aggregate of $43,833.71 in sales and use taxes on such purchases was paid to the State of Missouri. In June, 1969, Thompson-Stearns filed with the Director of Revenue a claim for refund of such taxes. Grounds for refund were generally that title to all

of the property involved vested in the United States, which was the "purchaser," and therefore the transactions were not subject to the Missouri sales and use taxes.

Mason-Rust, a joint venture consisting of Mason & Hanger-Silas Mason Co., Inc., and The Rust Engineering Company, entered into a "Cost Plus-A-Fixed-Fee Construction Contract" with the United States, pursuant to which Mason-Rust would rehabilitate, convert and construct facilities at the Gateway Army Ammunition Plant in St. Louis, for the manufacture of 175mm shells. Mason-Rust, in carrying out the contract, between September, 1967 and May, 1969, made purchases of tangible personal property on which sales and use taxes aggregating $103,562.50 were paid to the State of Missouri. Its claim for refund of such taxes, on the same grounds as those stated by Thompson-Stearns, was filed June 13.

On June 27, 1969, the Director of Revenue rejected both claims for refund on the grounds that under Missouri law the contractor was deemed the consumer of tangible personal property used in the performance of a contract, including a contract with the United States.

On July 11, 1969, the claimants filed separate applications in the Cole County Circuit Court for alternative writs of mandamus to compel the Director of Revenue to refund the sales and use taxes for which the claims had been denied. Alternative writs issued.

Motions to dismiss for lack of jurisdiction were filed by the Director on the grounds that relators had failed to exhaust their administrative remedies under § 536.-150, RSMo 1969, V.A.M.S. The motions were overruled. Returns to the alternative writs were filed and replies made to such returns. The cases were submitted on stipulated facts. The court quashed the alternative writs and entered judgments against relators. Separate appeals were filed. This court ordered the cases consolidated for argument and opinion.

■ Before attending to the merits of the appeals, a question of the propriety of the method of relief pursued by the relators must be answered. The respondent, with the support of amicus curiae, would uphold the judgment below on the grounds that the trial court had no jurisdiction to entertain the application for mandamus. Respondent asserts that, upon rejection of the claims for refund, the claimants were obliged to seek review of the Director's decision by way of the State Tax Commission, under § 138.430, RSMo 1969, V.A.M.S., with judicial review thereafter as provided in contested cases, under §§ 536.100 to 536.140, RSMo 1969, V.A.M.S.

The relators assert that under § 144.261, RSMo [1] providing that decisions of the Director in sales tax matters are "subject to judicial review in the manner provided by chapter 536, RSMo," they were entitled to judicial review under § 536.150, RSMo, which specifically enumerates mandamus as one method of judicial review.

1. The claims for refund in both cases relate to both sales taxes and use taxes. Except for statements in relators' briefs that the use tax involved "is negligible in amount," there is no indication of what amount involved in each case is sales tax and what is use tax. § 144.685, part of the "Compensating Use Tax Law," provides for judicial review of the Director in matters under such law in language employed in § 144.261, with the added provision that petition for review must be filed within one year "and the cause shall be heard de novo." Since all parties

here have briefed and argued this problem on the basis of the meaning of § 144.261, this appeal will be considered on that basis. It may be noted, also, that no objection has been raised by the respondent that the claims for refund were filed more than one year from the date of payment of the taxes (§ 144.190, subd. 2, RSMo 1969), nor is any contention made that relators are not the proper parties to maintain these actions. See International Business Machines Corp. v. State Tax Commission, Mo.Sup., 362 S.W.2d 635.

Section 138.430, subd. 1, RSMo, provides:

"Any person, firm or corporation shall have the right to appeal to the state tax commission from any finding, order, decision, assessment or additional assessment made by the director of revenue, or by the state collector of revenue, under such rules and regulations as said commission shall prescribe. The state tax commission shall have authority to affirm, modify or reverse any such finding, order, decision, assessment or additional assessment which is found to be unlawful, unfair, improper, arbitrary or capricious."

This provision was originally enacted as paragraph (4) of § 15 of Laws of Mo.1945, p. 1805. Section 15 dealt primarily with the duties of the State Tax Commission relative to property taxation. In the case of Gas Service Co. v. Morris, Mo.Sup., 353 S.W.2d 645, this court, in 1962, held that the provision for review of findings of the Director of Revenue was not limited to property tax matters. In that case, an application had been made to the Director of Revenue for refund of corporate domestication tax. Refund was denied and the taxpayer brought suit. This court held that the suit could not be maintained and that the remedy was administrative review by the State Tax Commission of the Director's refusal, followed by judicial review under §§ 536.100 to 536.140, RSMo 1969, V.A.M.S. In its opinion this court stated that § 138.140 "was meant to include any such finding, decision, etc., [of the Director] made in any matter relating to taxation, and that the legislature did not intend to limit the section's provisions in paragraph one to decisions, etc., relating only to matters involving property taxes." 353 S.W.2d 654[6, 7].

The sales tax law, on its original enactment, provided for review of determinations of law and fact by the State Auditor in the administration of the law, by certiorari to the auditor from the circuit court in the taxpayer's county of residence, or place of business. Laws of Mo. Extra Sess. 1933–1934, p. 155, § 32, p. 165. In the 1945 General Assembly, in which the sales tax law was amended conformably with the 1945 Constitution to transfer its administration to the Director of Revenue, § 11445, RSMo 1939, providing for certiorari to review decisions of the auditor, was amended to refer to the Director of Revenue, rather than the auditor. Laws of Mo. 1945, p. 1865, § 11445, p. 1878. In Kleban v. Morris, 363 Mo. 7, 247 S.W.2d 832, this court held that the procedure for refund of illegal taxes paid under the sales tax law was by filing a claim for refund with the Director of Revenue, followed by judicial review on writ of certiorari, pursuant to § 144.260, RSMo 1949, in which the 1945 amendment of § 11445, supra, appeared. 247 S.W.3d 837[4].

In 1955, the General Assembly repealed § 144.260, RSMo 1949, providing for review by certiorari of sales tax decisions of the Director of Revenue and provided for review of such matters by the State Tax Commission, with judicial review thereafter under §§ 536.100 to 536.140. The 1955 enactment also provided additional compensation for members of the State Tax Commission for the performance of such duty. Laws of Mo.1955, p. 833. The provision for extra compensation appeared as § 138.-235, RSMo 1957 Supp. It was repealed by a "revision" bill of the 70th General Assembly (1959) by which separate provisions for compensation of members of the State Tax Commission were incorporated in a single section. H.B. 107, § 138.230.

In 1961, § 144.261, RSMo 1959, providing for tax commission review of the Director's decisions in sales tax matters was repealed and present § 144.261, RSMo 1969, was enacted. It provides:

"Any final decision, finding, order or ruling of the director, under the provisions of [this chapter] is subject to judicial review in the manner provided by chapter 536, RSMo."

Respondent and amicus argue that the 1961 repeal of the specific provision for tax commission review of sales tax matters

left § 138.430 applicable in such matters, and therefore administrative review by the State Tax Commission was a prerequisite to judicial review. Relators contend that the 1961 amendment was intended to eliminate the tax commission from the review of sales tax matters, and that the decision of the Director was reviewable judicially as provided in § 536.150, in noncontested cases where no administrative review is provided.

The parties agree that, prior to the 1955 amendment above referred to, judicial review of the Director in sales tax matters was direct, by way of certiorari, because of the express provisions of the sales tax law to that effect. The existence of that remedy was noted by the court in the Gas Service case, supra, and the court agreed with the contention there advanced that the express provision for review by certiorari excluded sales tax matters from review under § 138.430. 353 S.W.2d 651. Respondent points to language in that case which he claims holds that § 138.430 is broad enough to extend to all tax matters coming before the Director of Revenue. However, the only matter for decision in that case was a corporate domestication tax refund claim and nothing more than that was decided, whatever the language used.

■ If the respondent's argument is correct, the 1961 repeal of § 144.261 and the re-enactment of § 144.261 with new language have no meaning or effect. Under respondent's theory, prior to the change, review was, by express provision of § 144.260, through the State Tax Commission; after the change, review was through the same channel by virtue of § 138.430. A change in a statute is ordinarily intended to have some effect. Darrah v. Foster, Mo.Sup., 355 S.W.2d 24, 30[8, 10]. The legislature will not be charged with having done a meaningless act. Wright v. J. A. Tobin Construction Company, Mo.App., 365 S.W.2d 742, 744[3, 4]. Throughout the history of the sales tax law from 1933 to 1955, a procedure was provided for direct judicial review of the decisions of the administrator of the law. In 1955, as a device for increasing the compensation of members of the State Tax Commission without violating § 13 of Art. VII, Const. of Mo., 1945, the tax commission was inserted as an agency for administrative review of the Director's order. The need for the device as a justification for the compensation increase disappeared and the provision that compensation be paid for such service was dropped in 1959. In 1961, the legislature repealed the provision for review by the tax commission. That act can only properly be held to have intended to restore the prior system of direct judicial review, without intervening administrative review, of the Director's decisions in sales tax matters. Therefore, the trial court correctly overruled the motion to dismiss on this ground.

Turning to the merits, the cases below were submitted on identical stipulation of facts, except, of course, for the identity of the contractor. The facts, so stipulated, were as follows:

"When the job commenced Mason-Rust had neither contracted for nor purchased and stockpiled any material to be used in the performance of the contract. All material purchased was purchased specifically for performance of the contract at this site which is located on a United States Government reservation.

"Property purchases were initiated by a requisition, on a government approved form, which was submitted to the Government's representative at the job site for approval. Upon approval bids (either oral or written, depending on the amount involved) were solicited by representatives of Mason-Rust and, with government approval, a contract, exemplified by the purchase order (Exhibit B in the Exhibit Book) was awarded.

"Inasmuch as Mason-Rust had no storage or other facilities in Missouri all property was shipped and delivered direct to the job site on the government

reservation. In most cases such shipments were made with freight included in the purchase price. In rare instances shipments were made FOB job site on the government reservation or FOB the vendor's dock. All shipments were made by transportation chosen by the Vendor in a normal commercial manner direct to the job site on the government reservation. Upon receipt all such property was inspected by a representative of the United States Government. If accepted, such property was immediately listed as government property on a property record form approved by the government. Where practical, such property was marked or tagged with symbols identifying it as government owned property and, where not practical, was incorporated into or with government property or stockpiled for later use on the job or if not needed for later transfer upon government instruction to another government project. Where material not meeting specifications was delivered, the material was returned to the Vendor for replacement.

"Risk of loss at no time fell on Mason-Rust. Risk of loss in transit was on Vendor or the carrier and upon arrival at the job site all risk of loss immediately passed to and thereafter remained in the government except where gross negligence on the part of Mason-Rust was shown. The government provided all plant security on a twenty-four basis.

"After material was received the Vendor forwarded the invoice for the material to Mason-Rust at the job site on the government reservation. Mason-Rust paid said invoice and was thereafter immediately (generally within one week) reimbursed by the Government for the exact amount paid. Mason-Rust at no time pledged government credit in connection with any purchase.

"While the government had the right to divert goods in transit, this was not done. However, it was not unusual for the government to direct the transfer of material from the job site to another government reservation to higher priority utilization. Such transfer was accomplished by forwarding to Mason-Rust a special form prepared by the government and utilized for that purpose.

"On termination of the contract, all property not utilized in the completion of the work was stored by, at the risk of, and at the expense of the government or transferred by it at its expense to another project."

The pertinent provisions of the Missouri Sales Tax Law [2] are as follows:

Section 144.020:

"1. A tax is hereby levied and imposed upon all sellers for the privilege of engaging in the business of selling tangible personal property * * *. The rate of tax shall be as follows:

"(1) Upon every retail sale in this state of tangible personal property a tax equivalent to three percent of the purchase price paid or charged, * * *."

Section 144.010(8):

"(8) 'Sale at retail' means any transfer made by any person engaged in business as defined herein of the ownership of, or title to, tangible personal property to the purchaser, for use or consumption and not for resale in any form as tangible personal property, for a valuable consideration; * * *."

Section 144.010, subd. 1(6) defines "purchaser" as:

" * * * a person who purchases tangible personal property * * *, receipts

**2.** Neither appellants nor respondent refer to statutory provisions applicable to the use tax law. §§ 144.600 to 144.745, RS Mo 1969. Respondent apparently is willing to accept appellants' position that the scope of the use tax is co-extensive with that of the sales tax.

from which are taxable under this chapter."

Section 144.030:

"1. There is hereby specifically exempted from the provisions of sections 144.010 to 144.510 and from the computation of the tax levied, assessed or payable * * * any retail sale which the state of Missouri is prohibited from taxing under the constitution or laws of the United States of America, * * *.

\* \* \* \* \* \*

"3. There are also specifically exempted from the provisions of sections 144.010 to 144.510 * * *:

\* \* \* \* \* \*

"(5) Tangible personal property which is used exclusively in the manufacturing, processing, modification or assembling or products sold to the United States government or to any agency of the United States government; * * *."

Both contracts here involved provided "Title to all property purchased by the Contractor, for the cost of which the Contractor is entitled to be reimbursed as a direct item of cost under this contract, shall pass to and vest in the Government upon delivery of such property by the vendor."

The purchase order form used by Mason-Rust in the performance of its contract contained the following provision:

"9. Title to all purchased Property shall pass to United States Govt. upon delivery to project receiving warehouse & signed by a Mason-Rust Rep. at Gateway Army Ammunition Plant."

The purchase order form used by Thompson-Stearns-Roger provided:

"Title shall pass to and vest in the Government upon delivery by the vendor or sub-contractor."

Relying upon these provisions of their contracts and purchase order forms, appellants contend that, under the definition of "sale at retail" and "purchaser" in § 144.-010, subd. 1(8) and (6), respectively, a tax is imposed under § 144.020, subd. (1), supra, only in transactions in which there is "a unity between the recipient of title and the person or entity who is the 'purchaser' of the property * * *." They argue that, if they are to be considered "purchasers," no liability for the tax arose because they did not receive title to the property, which, instead, passed directly to the United States. They further argue that, if the United States be considered the "purchaser," the transaction is not taxable because of the doctrine of intergovernmental immunity laid down in McCulloch v. Maryland, 4 Wheat. 316, 17 U.S. 316, 4 L.Ed. 579.

■ The latter proposition is not subject to challenge. However, since the decision in Alabama v. King & Boozer, 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3, it is clear that a state is not precluded from taxing purchases by a contractor of materials and supplies employed in the performance of cost-plus contracts with the United States Government, although the contract provides that title to the property purchased shall vest in the United States upon its delivery to the building site and that the government shall reimburse the contractor for the cost of materials purchased by him. In that case the court held that, if the legal incidence of the tax was on the purchaser and not the United States, the fact that the economic burden of the tax was passed on to the United States did not cause it to be a tax upon the United States.

■ The question to be resolved here, therefore, is whether or not the Missouri sales tax is imposed upon the contractors in the circumstances of this case.

■ In their emphasis upon the direct passage of title from the seller to the Unit-

ed States, the appellants have largely overlooked the alternative transfer of "ownership" as giving rise to a taxable transaction. In their reply brief they do reject any significance being given that term, asserting that it is synonymous with "title." However, the general rules of statutory construction require that meaning be given to each word used in a legislative enactment, insofar as possible, and one word of a statute should not be considered a needless repetition of another. 50 Am.Jur. Statutes, § 359.

If, as appellants contend, they never had "title" to the materials, etc., involved because "title" passed directly from the vendor to the government, the appellants, nevertheless, did have such dominion over the property as enabled them to designate the transferee of the "title." They did so by virtue of their contract with the government, but the sellers of the goods were not parties to such contracts, and they transferred "title" to the United States because the contractors as purchasers of the goods directed that such be done.

 The term "ownership" cannot be said to have a fixed, definite meaning. Siemer v. Schuermann Building & Realty Co., Mo.Sup., 381 S.W.2d 821, 826; 67 C. J.S. Own, p. 547. Its meaning varies in the context in which the term is used. Used here, with the word "title," the legislative intent must have been to denominate some interest or right other than the so-called "bundle of rights" encompassed by the term "title." According to Black's New Dictionary (Rev. 4th Ed.), the word "Owner" "is not infrequently used to describe one who has dominion or control over a thing, the title to which is in another."

 There is no question that the General Assembly in enacting the sales tax law intended to place the burden of the tax upon the person paying the purchase price. § 144.060, § 144.080, subds. 4 & 5, RSMo

1969, V.A.M.S. In defining a "purchaser" as the person to whom either "ownership" or "title" is transferred, the legislature must have intended to include not only transactions in which the person who pays the purchase price is the recipient of the legal title to the property, but also to include the myriad of transactions in which the purchase price is paid by one who does not receive technical legal title but who exercises dominion over the property such as by directing who the recipient of such title shall be. No other reasonable explanation for the use of the alternative term appears, and such meaning may be given the provisions here involved without doing violence to the rule that the right to levy a tax must clearly be authorized by statute, which is to be construed strictly against the taxing authority. State ex rel. Ford Motor Co. v. Gehner, 325 Mo. 24, 27 S.W. 2d 1; State ex rel. Western Union Tel. Co. v. Markway, 341 Mo. 976, 110 S.W.2d 1118. That rule does not require that language of a taxing statute be ignored and not given a meaning which reasonably accords with "the apparent intention of the Legislature as expressed in the statute, with a view to promoting the apparent object of the legislative enactment." State ex rel. Halferty v. Kansas City Power & Lt. Co., 346 Mo. 1069, 145 S.W.2d 116, 122(6–10); State ex rel. Hatten v. Kansas City Power & Light Company, 365 Mo. 296, 281 S.W.2d 784, 788[4, 5].

In view of the fact that the legal incidence of the tax depends upon the particular taxing statute, little is to be gained by reference to cases in other jurisdictions construing statutes of such jurisdictions, dissimilar from that of this state. Appellants have placed their principal reliance upon Avco Manufacturing Corporation v. Connelly, 145 Conn. 161, 140 A.2d 479, in which the court considered the direct passage of title from the seller to the United States in a contract with provisions similar to those here involved, a significant factor under the statute there involved which em-

phasized the passage of title as the taxable event. The court in that case also noted that the contract there involved was a "facilities" contract under which the contractor handled "the mechanics of procurement for the government * * * without profit to themselves * * *." All of the circumstances of that case were more nearly akin to an agency arrangement, with the contractor acting as agent of the government. The purchase orders were much more explicit than those employed by the parties here. The order stated: "This equipment is purchased on behalf of the United States Government and will be Government owned." Shipment of the property was on government bills of lading. The decision in that case is not persuasive here.

■ Appellants also contend that the transactions involved in this case were exempt from tax under § 144.030, subd. 3(5) which exempts from sales tax, sales of:

"Tangible personal property which is used exclusively in the manufacturing, processing, modification or assembling of products sold to the United States government or to any agency of the United States government."

On this issue the court below found that there were no facts showing that this exemption was applicable. Appellants here have not demonstrated that such finding was erroneous and the trial court's ruling on that issue must, therefore, be affirmed.

Judgments affirmed.

HIGGINS, C., concurs.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the court.

HOLMAN, P. J., SEILER, J., and KEET, Special Judge, concur.

BARDGETT, J., not sitting.