MARTIN MARIETTA CORPORATION, Plaintiff–Appellee,

v.

The REGIONAL TRANSPORTATION DISTRICT, A Special District; Alan N. Charnes, Director of the Colorado Department of Revenue; and the Colorado Department of Revenue, State of Colorado, Defendants–Appellants.

No. 87CA1320.

Colorado Court of Appeals, Div. I.

Feb. 2, 1989.

Rehearing Denied March 9, 1989.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo.Const., art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).

Holme Roberts & Owen, David S. Steefel, Denver, for plaintiff-appellee.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Anthony S. Trumbly, Asst. Atty. Gen., Denver, for defendants-appellants.

PLANK, Judge.

The Regional Transportation District, Alan Charnes, and the Colorado Department of Revenue appeal the ruling of the district court which found Martin Marietta Corporation (MMC) exempt from the Colorado use tax (use tax) and Regional Transportation District tax (RTD tax), pursuant to § 39–26–203(1)(b), C.R.S. (1982 Repl.Vol. 16B). We affirm.

MMC is in the business of performing work for the federal government under detailed contracts. Part of its contractual duty is to acquire special tooling and test equipment (property) for use in the performance of the contracts. It is in the purchase of this property on which the department of revenue assessed the tax and interest. This property is acquired by MMC as an independent contractor and not as an agent of the federal government. MMC pays for the property with its own funds and it takes title to it for some period of time, in some cases for only an instant, before title passes to the federal government. The federal government then reimburses MMC for the costs. When the work under the contract is completed the property is owned by the federal government and is totally subject to its control.

Following an audit, the Colorado Department of Revenue made a tax assessment against MMC. MMC protested this assessment and a final determination upholding the department's position was made by Alan Charnes, the executive director of the department of revenue. MMC appealed the determination to the district court as provided for by § 39–21–103, C.R.S. (1982 Repl.Vol. 16A). The trial court, basing its decision on a stipulated set of facts presented by all parties, reversed the department's holding and entered judgment in favor of MMC.

I.

The main issue before this court is whether the plaintiff's purchase from its vendors is a purchase for the purpose of resale to the federal government.

Tangible personal property is not subject to the use tax if it was purchased for resale. Section 39–26–203(1)(b), C.R.S. (1982 Repl.Vol. 16A) provides that Colorado's use tax shall not be assessed upon:

"the storage, use, or consumption of any taxable personal property purchased for resale in this state, either in its original form or as an ingredient of a manufactured or compounded product, in the regular course of a business."

Hence, under this statute, the three elements of the purchase for resale exemption are (1) a purchase, (2) for resale, and (3) in the regular course of business.

The trial court determined that MMC established each of these three elements. We agree.

It is undisputed that the property was purchased by MMC. Next, we must determine whether the transaction between MMC and the federal government constitutes a sale. The Colorado Uniform Commercial Code, in § 4–2–106(1), C.R.S., defines a sale as the passing of title from the seller to the buyer for a price. Here, there can be no dispute that these transactions are sales to the federal government because MMC first acquires title and then conveys its title to the government for a price.

Secondly, we determine that MMC established the second element of the "purchase for resale" exemption, i.e., that the purchases were "for resale." As the stipulated facts demonstrate, each purchase of the personal property by MMC involved (1) passage of title to the personal property from the original vendor through MMC to the federal government and (2) payment by the federal government to MMC for the

personal property. Thus, the trial court properly determined that each purchase of the personal property by MMC entailed a resale to the federal government. Here, we find there is adequate evidence in the record to support the trial court's conclusion.

The final issue is whether the resale occurred in the regular course of business. Part of MMC's regularly conducted business is the performance of government contracts. Indeed, MMC had over fifty contracts with the government at the time the dispute arose. Part of the performance of these contracts was to acquire the property for sale to the government. As a result, the trial court determined that the transactions constituted a resale in the regular course of business. Under the facts as stipulated, we perceive no error in that finding.

Hence, we conclude that the trial court correctly ruled that the transactions here met the statutory criteria for exemption from the use tax and the RTD tax. *Accord Lockheed Aircraft Corp. v. State Board of Equalization,* 81 Cal.App.3d 257, 146 Cal. Rptr. 283 (1978); *Day & Zimmerman v. Calvert,* 519 S.W.2d 106 (Tex.1975); *State Tax Commission v. Graybar Electric Co.,* 86 Ariz. 253, 344 P.2d 1008 (1959); *Avco Manufacturing Corp. v. Connelly,* 145 Conn. 161, 140 A.2d 479 (1958); *Comptroller v. Glenn L. Martin Co.,* 216 Md. 235, 140 A.2d 288 (1958).

JUDGMENT AFFIRMED.

PIERCE and HODGES *, JJ., concur.