UNITED STATES of America, Plaintiff,

v.

Duane BENTON, Director of Revenue, State of Missouri; Missouri Department of Revenue; and State of Missouri, Defendants.

No. 89-0608-CV-W-3.

United States District Court, W.D. Missouri, W.D.

Oct. 26, 1990.

E. Eugene Harrison, Gay L. Tedder, Alleen S. Castellani, U.S. Attorney's Office, Kansas City, Mo., David M. Katinsky, U.S. Dept. of Justice, Washington, D.C., for U.S.

James B. Deutsch, Missouri Atty. General's Office, Jefferson City, Mo., for defendants.

## MEMORANDUM OPINION AND ORDER

ELMO B. HUNTER, Senior District Judge.

Before the Court are Plaintiff's and Defendants' motions for summary judgment. Fed.R.Civ.P. 56(c) states that a motion for summary judgment shall be rendered if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. A moving party for summary judgment must "establish the right to judgment with such clarity that there is no room for controversy." *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir.1984). The material facts in this case are undisputed.

In its complaint, the U.S. seeks:

a] a declaratory judgment that the State of Missouri is prohibited from imposing Missouri sales and use taxes on purchases of tangible personal property by Olin Corporation, a contractor of the United States, for the operation of the Lake City Army Ammunition Plant because the purchases were for the purpose of resale to the United States and are not subject to Missouri sales and use taxes;

b] injunctive relief prohibiting the defendants and all those acting in concert with them from imposing or collecting Missouri sales and use taxes on the sale and use of property purchased by Olin for the operation of the Plant; and

c] a refund of sales and use taxes paid by Olin on its purchases of tangible personal property for the operation of the Plant.

Defendants previously filed two motions to dismiss. Both were denied. The U.S. contends Olin is exempt from sales and use taxes because it is the operator of a U.S. owned munitions plant and the property is purchased for resale to the United States Army.

The plant is a government owned manufacturing facility located in Independence, Missouri, and manufactures ammunition for the U.S. and its allies. Since November 3, 1985, the plant has been operated and maintained by Olin pursuant to the terms of its contract with the Army. Olin is an independent contractor charged with the operation management and maintenance of the plant as the Army directs and is not an agent of the U.S. Olin made payments of Missouri sales and use taxes between November 1985 and April 1988, all of which were reimbursed by the U.S.

The contract is a cost plus award fee contract where Olin receives an annual fee for operation and maintenance of the plant and reimbursement for its costs of operating the plant. The annual fee is divided into two portions. The first portion is a base fee, which is approximately 15% of the total fee potential and is paid in 12 monthly payments and represents a 'fixed fee.' It is negotiated in advance and based upon the forthcoming year's projections. The second portion of the annual fee is an award fee and is paid annually. It is based on the Army's evaluation of Olin's operation and management of the plant.

Instead of providing a final manufactured product for the Army, Olin furnishes personnel to manage and operate the plant. The Army reimburses Olin for salaries and other allowable personnel costs. Olin furnishes all equipment, supplies, and materials to operate and maintain the plant as prescribed in the contract. Olin is not required to obtain the U.S.'s specific approval for each transaction, and has the discretion to remove the amount of property from inventory that is needed to perform the contract. Olin must report to the U.S. and most tasks are expressly subject to the direction or approval of the Army's Contracting Officer. Olin issues checks from its account to pay for the property and is reimbursed by the United States for funds expended.

Although Olin executes contracts for the purchase of all tangible personal property needed for the operation of the plant in its own name, the contract provides that the title to the property passes directly to the U.S., incorporating by reference Federal Acquisition Clause 52.245–05. Thus, Olin never holds title to the property purchased. The purchase orders which Olin places with third party vendors also provide for the passage of title to the U.S., consistent with the contract.

## I. PROCEDURAL ISSUES

Defendant contends that Plaintiff is an improper party, and argues that Olin purchased the property in question and resold it for cost to the U.S., thus Olin is the proper party to bring this suit. The sales tax was collected from Olin on its purchases from third party vendors. No sales tax was collected from the United States on its reimbursement of Olin's purchases. Section 144.190.2, RSMo.1986, provides that the entity under Missouri tax law who is required to remit taxes is the seller of tangible personal property and the U.S. is not a seller. Missouri concludes that the U.S. is not the proper party to receive a

refund. Additionally, Missouri contends that the U.S. has not followed § 144.190.3, RSMo.1989, which provides that "Every claim for refund must be in writing under oath, and must state the specific grounds upon which the claim is founded."

These arguments are premised on a state law action for refund. In an action brought by the U.S. against a county to recover a refund of ad valorem taxes paid by mistake by the U.S. and its contractor, the Eleventh Circuit held:

> In contending that the district court was without subject matter jurisdiction because prior to 1975 payments of taxes were voluntarily made and thereafter the administrative procedure provided by the Georgia statute was ignored, the county misconceives the theory of the Government's claim. It was not posited upon state law, common or statutory, but upon Federal law. Its action sounded in quasi-contractus for the recovery of its treasury funds paid by mistake which resulted in the unjust enrichment of the county. Neither voluntary payment nor the failure to exhaust state administrative remedies was available as a defense to its claim.

*United States v. DeKalb County,* 729 F.2d 738, 741 (11th Cir.1984).

■ Where the U.S. seeks a refund of state taxes erroneously collected from a federal contractor and paid by the U.S., the U.S. is bringing an action in *indebitatus assumpsit,* or quasi-contract, for money had and received, and is not bringing a state law cause of action for refund of taxes. *See U.S. v. Broward County,* 901 F.2d 1005 (11th Cir.1990); *U.S. v. Michigan,* 851 F.2d 803 (6th Cir.1988); and *New Orleans v. U.S.,* 371 F.2d 21 (5th Cir.), *cert. denied,* 387 U.S. 944, 87 S.Ct. 2076, 18 L.Ed.2d 1330 *reh. denied,* 389 U.S. 890, 88 S.Ct. 19, 19 L.Ed.2d 201 (1967). Under federal common law principles, the U.S. has the right to sue for the recovery of funds paid from the federal treasury, whether or not any specific state statute authorizes the suit. *DeKalb County,* 729 F.2d at 741 n. 4. "The interpretation of a contract between the United States and another par-

ty is a federal issue." *U.S. v. Benton,* 729 F.Supp. 671, 673 (W.D.Mo.1990).

■ The U.S. is the proper party to bring a quasi-contractual action for money had and received where its contractor has wrongly paid over taxes to a state or political subdivision and the United States has reimbursed the contractor. *See DeKalb County,* 729 F.2d at 738; *U.S. v. Nevada Tax Comm'n,* 439 F.2d 435 (9th Cir.1971); and *Marquardt Corp. v. Weber County,* 360 F.2d 168 (10th Cir.1966). Similarly, federal courts have held that the U.S. need not exhaust state administrative procedures, such as presenting a claim for refund in writing, prior to bringing a federal quasi-contractual action. *DeKalb County,* 729 F.2d at 741. The United States' claim will not be dismissed because the U.S. failed to follow § 144.190.3, RSMo.1986.

Further, this Court previously held that the U.S. demonstrated it suffered direct pecuniary injury as a result of the imposition of the Missouri sales and use taxes on Olin's purchases of tangible personal property, where the contract required the U.S. to reimburse Olin for all purchases of property. *Benton,* 729 F.Supp. at 673. Thus, the U.S. is a proper party; does not lack standing; and need not resort to State courts to obtain relief. *Id.* at 673–76.

■ Defendants contend the U.S. is procedurally barred from receiving at least a portion of its claimed refund because section 144.190.2, RSMo.1989, provides:

> No ... credit or refund shall be allowed unless duplicate copies of a claim for refund are filed within three years from the date of overpayment.

The federal doctrine of sovereign immunity bars the application of state statutes of limitations brought by the United States. *Badaracco v. Commissioner,* 464 U.S. 386, 400 n. 10, 104 S.Ct. 756 n. 10, 78 L.Ed.2d 549 (1984). Further, 28 U.S.C. § 2415(a), (1980), provides that "every action for money damages brought by the United States ... which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues."

This suit was filed on June 23, 1989, and the period for which the United States seeks a refund is subsequent to June 23, 1983, thus this action is not precluded.

## II. IMPOSITION OF SALES TAX

■ Taxing statutes must be construed strictly, and taxes will not be assessed against the United States unless they are expressly authorized by law. *St. Louis Country Club v. Administrative Hearing Comm'n,* 657 S.W.2d 614, 617 (Mo. banc 1983). It is unconstitutional under *McCulloch v. Maryland,* 4 Wheat 316, 4 L.Ed. 579 (1819), for a state to directly tax the United States or one of its instrumentalities. *See also United States v. County of Fresno,* 429 U.S. 452, 97 S.Ct. 699, 50 L.Ed.2d 683 (1977). This rule is designed to prevent the states from imposing restraints on the constitutional function of the United States by "hamstringing its power;" interfering with its property; or discriminating "against the Federal Government, its property or those with whom it does business." *Detroit v. Murray Corporation of America,* 355 U.S. 489, 495, 78 S.Ct. 458, 462, 2 L.Ed.2d 441 (1958). In the absence of Congressional exemption, the Supreme Court determines if the legal incidence of the state tax has been placed on the United States, its property or one of its instrumentalities. *United States v. Forst,* 442 F.Supp. 920, 923 (W.D.Va.1977), *aff'd* 569 F.2d 811 (4th Cir.1978).

"The Supreme Court has made it explicit that the contracting parties—that is, the United States and its contractor, have the power, when Congress has not waived governmental immunity, to prevent the state taxation on the sales by altering the form of their contract to make the contractor the purchasing agent of the United States with the authority to bind the credit of the United States." *Forst,* 442 F.Supp. at 924, citing *Kern–Limerick, Inc. v. Scurlock,* 347 U.S. 110, 122, 74 S.Ct. 403, 410, 98 L.Ed. 546 (1954). Additionally, if the U.S. had directly paid the third party vendors for the property delivered to its plant, this case would be moot.

Section 144.020.1, RSMo.1986, imposes a tax:

upon all sellers for the privilege of engaging in the business of selling tangible personal property or rendering taxable service at retail in this state.

The Missouri legislature has defined "at retail" as:

any transfer made by any person engaged in business as defined herein of the ownership of, or title to, tangible personal property to the purchaser, for use or consumption and not for resale in any form as tangible personal property, for a valuable consideration ...

§ 144.010.1(8).

■ In essence, § 144.010.1(8) sets forth the requirements for a sale "at retail" as a transfer which is (1) for use or consumption and (2) not for resale. *See Odorite of America, Inc. v. Director of Revenue,* 713 S.W.2d 833, 836–37 (Mo. banc 1986).

## III. "RESALE"

■ The U.S. contends Olin's purchases of tangible personal property are for the sole purpose of reselling the property to the U.S. The U.S. and Olin have contracted that title passes directly from the vendor to the U.S. upon delivery of the tangible personal property, whether delivery occurs at the shipping point or at the plant. Olin's purchase orders provide for title passage to occur upon delivery. The U.S. contends that title passage governs when a retail sale occurs, and, here, title passes upon delivery. The U.S. asserts that both the parties' intent and the completion of performance evidence that Olin's resale to the U.S. takes place upon delivery at the plant. At that time, title passes to the U.S., and a retail sale occurs. The U.S. concludes that since Olin has the power to designate the U.S. as the party to whom the vendor transfers title, Olin is a seller, and a sale takes place upon delivery.

The legal incidence of the Missouri sales tax falls upon the purchaser of tangible personal property. *See* § 144.060, RSMo. 1986. Missouri seeks to impose a sales tax on Olin for its purchases. Here, Olin pays the purchase price of the property and the

sales tax and Olin is subsequently "reimbursed" by the U.S. for the purchase price and sales tax. The question becomes whether Olin resells the property to the United States. *See* § 144.010.1(8). This Court previously stated:

> The applicable Missouri statutes are unambiguous. It is the contractual relationship between the United States and Olin that lies at the heart of this case. Only by interpreting and construing that relationship can the Court determine whether Missouri can lawfully require Olin to pay sales and use taxes on personal property purchased pursuant to the contract.

*United States v. Benton,* 729 F.Supp. 671, 675 (W.D.Mo.1990).

Although Missouri statutes do not define "resale," they do define "sale." The definition of "sale" in the use tax statutes is applicable to the definition of "resale." *Smith Beverage Co. v. Reiss,* 568 S.W.2d 61, 63 (Mo. banc 1978). Section 144.010.-1(7), RSMo.1986, defines sale as:

> any transfer, exchange or barter, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property for valuable consideration
> . . .

The purchaser of items sold is defined by the U.S. Supreme Court as the person who orders the goods and either pays for them or is legally obligated to pay for them if the sale is on credit. *Alabama v. King & Boozer,* 314 U.S. 1, 10, 62 S.Ct. 43, 46, 86 L.Ed. 3 (1941) (upholding the state tax, finding that the contractors were to purchase in their own names and on their own credit and that the Government was not bound by their purchase contract). Defendants and plaintiff concur that Olin has made a purchase of the property. The U.S. is obligated, per contractual agreement, to reimburse Olin for this purchase.

*State ex rel. Thompson—Stearns—Roger v. Schaffner,* 489 S.W.2d 207 (Mo.1973), is discussed in depth by both parties, each having a much different analysis of the case. This case involves the activities of two joint venture, independent contractors for the United States. Both entered into cost-plus-fixed fee contracts with the U.S. Pursuant to its contract with the U.S., Thompson—Stearns—Roger was to rehabilitate, convert and construct facilities for the manufacture of a defoliant. Mason-Rust, the other contractor, was contractually obligated to perform the same services at another plant.

Pursuant to their respective contracts, the contractors purchased a variety of tools, materials, construction supplies and other tangible personal property. Upon approval by a government representative at the site, bids were solicited. When the bids were approved, a purchase order was awarded. The property was shipped directly to the government job site where the government representative inspected it and gave his approval. Both contracts provided that title and risk of loss passed directly from the vendor to the U.S. upon delivery. All property was invoiced by the vendor to the contractor. The contractor paid the invoice and was reimbursed by the U.S. *Id.* at 212–14.

The contractors argued that they were not "purchasers" liable for the sales tax under the Missouri sales tax statutes, *Id.* at 214, whereas Olin concedes it is a purchaser and argues it resells tangible personal property to the U.S. The Court held that the contractors "largely overlooked the alternative transfer of 'ownership' as giving rise to a taxable transaction" and the contractors had such dominion over the property as enabled them to designate the transferee of the "title," and were therefore "purchasers." *Id.* at 215. The Court concluded that the legislature must have intended the "myriad of transactions where the purchase price is paid by one who does not receive technical legal title but who exercises dominion over the property to be transaction subject to sales tax." *Id.* "No other reasonable explanation for the use of the alternative term [ownership] appears." *Id.* Thus, the purchase of an ownership interest, i.e., such dominion over property to designate the transfer of title, is a taxable retail sale pursuant to *Thompson—Stearns—Roger.* However, if the purchase is for resale, then

it is not a taxable retail sale. *See* § 144.-010.1(8).

Missouri argues that Olin's transfer of title is not a resale because Olin retains an ownership interest, because Olin still manages and operates the plant at which the property at issue is employed. *Thompson—Stearns—Roger* did not address whether the contractor resold the tangible personal property to the U.S. The U.S. goes one step further and argues Olin resells the property to it. Thus, this is a question of first impression in the State of Missouri.

Arguably, Olin has an interest in the property. Missouri finds it conclusive that Olin manages and operates the plant which in effect means that Olin manages and operates the tangible personal property, whose title is vested in the U.S. To the extent Olin has an interest in the property, its interest is subservient to that of the United States', which is contractually obligated to pay Olin for the property. Olin's control is subservient to that of the U.S. "The (sales) tax is imposed upon sales for use or consumption. That means use or consumption by the purchaser." *Berry–Kofron Dental Laboratory Co. v. Smith*, 345 Mo. 922, 137 S.W.2d 452, 456 (Div. 2 1940).[1] After title passes, Olin merely accesses the property to perform its contractual obligations. This retained interest is de minimis and insufficient to hold that a resale did not occur. The statute specifically states a "resale in any form." Undoubtedly, Olin's sale is in a form different than that of many other sales, since Olin

manages and operates the plant in which the property is employed. However, this does not preclude the "form" of "resale" the U.S. and Olin envision from occurring.[2] In effect, defendants are contending Olin uses something it has resold.[3]

Missouri cites 12 C.S.R. 10–3.262(2), which provides:

Persons selling tangible personal property to contractors with the United States government or its agencies, the state of Missouri or Missouri political subdivisions, are subject to the sales tax on all sales, regardless of, to whom the contract or purchase order designates title is to pass.

Missouri statutes provide that sales tax will be imposed on retail sales, § 144.020.1, RSMo.1986, which are defined as a transfer of tangible personal property to the purchaser, for use or consumption and not for resale. § 144.010.1(8), RSMo.1986. To the extent there is a conflict between 12 C.S.R. 10–3.262(2) and § 144.020.1, RSMo.1986, the statute controls. Thus, Olin's purchases are taxable to the extent they are not for resale. § 144.010.1(8), RSMo.1986.

The definitions of "purchaser" and "seller" are substantially similar. *Cf.* §§ 144.-010.1(6) and (9), RSMo.1986. Missouri Department of Revenue's Rule No. 28, compares the terms "purchaser" and "seller:"

It is not necessary for a person to have an ownership interest in or title to the tangible personal property transferred to the purchaser for that person to be considered a seller under the Missouri state

---

**1.** The court rejected the Department of Revenue's contention that the dentist used or consumed a denture by placing it in his patient's mouth as part of his professional services. The court held that the denture was ordered for the patient, who is the user and consumer. Here, the U.S. is the ultimate user and consumer of the tangible personal property. In fact, if anyone uses the property, it is the U.S. *Chrysler Corp.*, 114 So.2d at 584–86; *General Motors Corp.*, 320 P.2d at 812; *Tawes*, 124 A.2d at 814. The legislature subsequently amended the statute, stating that tangible personal property made by dentists and used in their profession shall be deemed to have been purchased for use or consumption, and, hence, taxable.

**2.** This Court's holding is consistent with other Court's. *See Chrysler Corp. v. New Orleans*, 238

La. 123, 114 So.2d 579 (1959); *General Motors Corp. v. State Comm'n of Revenue and Taxation*, 182 Kan. 237, 320 P.2d 807, *cert. denied*, 358 U.S. 875, 79 S.Ct. 115, 3 L.Ed.2d 105 (1958); *Avco Mfg. Corp. v. Connelly*, 145 Conn. 161, 140 A.2d 479 (1958); and *Tawes v. Aerial Products, Inc.*, 210 Md. 627, 124 A.2d 805 (1956).

**3.** Missouri cites *R & M Enterprises, Inc. v. Director of Revenue*, 748 S.W.2d 171 (Mo. banc 1988) and *Odorite of America, Inc. v. Director of Revenue*, 713 S.W.2d 833 (Mo. banc 1986). Neither of these cases involve a resale. In neither case does the purchaser transfer title or ownership for consideration as Olin transfers to the U.S.

sales tax laws. The power to designate who is to obtain title to the property or to physically transfer the property is enough to categorize the person as a seller of the property.

12 C.S.R. 10–3.012(3).[4]

■ Olin pays the third party vendor and is subsequently reimbursed by the U.S. Olin instructs the vendor, through its purchase order, to transfer title to the U.S. Only Olin is bound by the purchase order. Olin admits it is a purchaser and designates the transfer of title to the U.S. at the point of delivery. The U.S. correctly contends this creates a retail sale. 12 C.S.R. 10–3.0112(3) indicates that Olin's power to designate that the U.S. is the entity to receive title is sufficient to characterize it as a seller, and thus a resale occurs, pursuant to § 144.010.1(8), RSMo.1986.

Missouri cites *United States v. Forst,* 442 F.Supp. 920, 924 (W.D.Va.1977), which held that "it is not critical who holds title to the purchased items as between the United States and its contractor. Nor is the degree of control over the contractor that the United States exercises with respect to the purchases critical. The key factor is whose credit, between the United States and the contractor, is bound by the purchasing agreement with the seller."

In *Forst,* the district court found that the resale exemption in Virginia's statutes was "designed only to prevent multiple sales tax incidence for the same tangible personal property," *Forst,* 442 F.Supp. at 925, and that the government contractor was the final consumer-purchaser of the tangible personal property. As in this case, the government contractor never had legal title to the items for which it was reimbursed fully by the U.S. However, the items were "purchased by the government contractor for its consumption in the performance of its contract with the United States.... We cannot say that any of these items were 'resold' to the United States." Here,

Olin exercises substantial control over the procurement of the property and its sole credit was involved in the purchases from vendors. Thus, under *Forst,* Olin's purchases would be taxable. This Court declines to follow *Forst,* but instead follows the holdings of the vast majority of other courts addressing this issue.

In *Comptroller of Treasury v. Glenn L. Martin Co.,* 216 Md. 235, 140 A.2d 288 (Md.), *cert. denied,* 358 U.S. 820, 79 S.Ct. 34, 3 L.Ed.2d 62 (1958), the contractor entered into contracts with the Navy and Air Force to purchase facilities and equipment to manufacture airplanes and weapons. Title to the property was to pass upon delivery. The contractor used the purchased facilities and equipment free of charge to manufacture munitions and airplanes for the U.S. *Id.* at 290. The Maryland court held that the sale to the contractor was a sale-for-resale, because title vested with the government upon delivery of the property, pursuant to the contractor's contracts with the government and the government's reimbursement of the contractor. The right of the U.S. to reject the goods was not a material factor. *Id.* 140 A.2d at 292. In *Martin,* the taxpayer was selling a finished product to the U.S., whereas Olin has no obligation to deliver a finished product to the U.S.

*State Tax Comm'n v. Graybar Elec. Co.,* 86 Ariz. 253, 344 P.2d 1008, 1012 (1959), had similar facts, and the Court held that since the property was "used as directed by the United States and the title thereto was in the Government, it can be logically concluded that the initial acquisition by Grand Central was either as an agent of the Government or for immediate resale to the Government."

In *Day & Zimmermann, Inc. v. Calvert,* 519 S.W.2d 106 (Tex.), *cert. denied,* 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975), the contractor had a cost plus award fee

---

**4.** Missouri argues that this is only applicable to auctioneers. The regulation's stated purpose is to interpret "the sales tax law as it applies to persons selling tangible personal property at auctions for unknown principals and" *and* to interpret and apply §§ 144.010.1(8) *and* (9) and

144.020, RSMo.1986 (emphasis added). The stated purpose clearly provides that it is not only applicable to auctioneers but is also applicable to the interpretation of §§ 144.010.1(8) and (9) and 144.020, RSMo.1986.

contract with the U.S. to operate a government owned plant. As with Olin and the U.S., its responsibilities as operator of the plant included loading, assembling, and packaging of ammunition and related components, and the procurement of all necessary materials, supplies, equipment and services. As with Olin and the U.S., all land and buildings were owned by the U.S. and under the command of a military officer, and the contract had a title vesting clause that called for title to pass directly from the vendor to the U.S. upon delivery. In *Day*, the contractor had the right to assign title, and the U.S. reimbursed the contractor prior to the contractor paying the vendors. Here, the title passes directly from the vendor to the U.S. upon delivery and Olin pays the vendor prior to the U.S.'s reimbursement. The Supreme Court of Texas held that a resale occurred because there were two distinct, identifiable transactions. The vendor sold the property to the contractor and the contractor sold the property to the U.S. Thus, a sale for resale had occurred and the sale to the contractor was not a taxable sale. *See Lockheed Aircraft Corp. v. State Bd. of Equalization*, 81 Cal.App.3d 257, 146 Cal.Rptr. 283 (2nd Dist.1978) and *Martin Marietta Corp. v. Regional Transp. Dist.*, 772 P.2d 668 (Colo.App.), *cert. granted*, 785 P.2d 916 (Colo.1989), for comparable holdings. All of the above cases, except *Forst*, are consistent with Missouri's goal of taxing the ultimate purchaser, which is the U.S. in this case.

The Missouri Supreme Court has held that the contractual relationship of the parties determines whether and when a taxable event takes place for purposes of the state sales and use tax, and the passage of title is the crucial taxable event for purposes of the sales tax. *State ex rel. Otis Elevator Co. v. Smith*, 357 Mo. 1055, 212 S.W.2d 580, 582 (Mo. banc 1948); *Marsh v. Spradling*, 537 S.W.2d 402, 405 (Mo.1976); and *Kurtz Concrete, Inc. v. Spradling*, 560 S.W.2d 858, 860 (Mo. banc 1978). Section 400.2–401(1), RSMo.1986, provides that: "title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties." If the contract between the buyer and the seller requires delivery at destination, title passes upon tender there. *Id.* at .2–401(2)(b). The contract provides that Olin and the U.S. have agreed that title passes directly from the vendor to the U.S. upon delivery of the tangible personal property at the plant. Additionally, the vendors and Olin have the same agreement in Olin's purchase orders, thus effecting a "resale."

The Missouri Supreme Court addressed an analogous situation in *Canteen Corp. v. Goldberg*, 592 S.W.2d 754 (Mo. banc 1980). There, Canteen rented space from Council Plaza and operated a dining facility for retired people. Canteen billed Council Plaza at a predetermined price per meal for the number of meals served. Council Plaza then billed the retirees for their meals. Council Plaza was legally obligated to pay Canteen for all meals served, whether or not Council Plaza received payment from retirees. *Id.* at 756. The Court held that two transactions took place. Canteen sold meals to Council Plaza for the purpose of Council Plaza selling the meals to the retirees. *Id.* Thus, there was not a taxable sale at retail from Canteen to Council Plaza, just as there is no sale at retail from third party vendors to Olin.

The contract between Olin and the U.S. expressly provides for title passage from third party vendors to the U.S. at the time of delivery. Once title passes, Olin no longer has dominion over the property. The dominion temporarily possessed by Olin to designate the transfer of title makes Olin a seller. 12 C.S.R. 10–3.012(3). Once title passes to the U.S., the U.S. has discretion as to the utilization of that property. The only significant interest Olin possesses is the dominion over the property to designate the transfer of title. *Thompson—Stearns—Roger*, 489 S.W.2d at 215. Thus, a resale is effected, making Olin's purchases of tangible personal property in accord with its contract with the U.S., a nontaxable transaction pursuant to § 144.-010.1(8). There "is no question that the General Assembly in enacting the sales tax law intended to place the burden of the tax upon the person paying the purchase

price." *Thompson—Stearns—Roger,* 489 S.W.2d at 215. Here, the U.S. directly pays the purchase price.

 Missouri argues that the U.S. did not pay for the title and Olin is not compensated for the transfer of the title, thus there is no resale to the U.S. This is incorrect. Olin is reimbursed for all expenses in operating and managing the plant, including the cost of property purchased pursuant to the contract. In addition, Olin is paid a base fee and an award fee under the contract. Section 144.010.-1(8) merely requires the transfer to be for "valuable consideration." Whether and if Olin shows a profit on the resale to the U.S., or from the base fee or award fee, this Court need not determine, because a lack of profit upon resale does not prevent a finding of a purchase for resale. *Glenn L. Martin Co.,* 140 A.2d at 292. Defendants raise numerous other arguments which are without merit and are summarily denied.

A transfer of ownership in tangible personal property is effected from vendors to Olin and a separate transfer of ownership effected from Olin to the U.S., when Olin directs the vendors to transfer title. Section 144.010.1(8) expressly requires a transfer for valuable consideration to be (1) for use or consumption and (2) not for resale in any form. Olin's purchases from vendors are for resale to the U.S., thus the transactions between Olin and vendors are not "at retail," as defined in section 144.010.1(8). Since the transactions are not "at retail," a section 144.020.1 imposition of tax is not applicable to the transfers at issue. This Court need not reach the issue as to whether Olin uses the tangible personal property since Olin resells the property to the U.S.

 The U.S. requests this Court to set a schedule for the calculation of remedial relief. The U.S. has stated in its answers to interrogatories and in deposition testimony, the amounts it claims are due. Thus, there is no need to establish a schedule.[5]

Accordingly, it is hereby ORDERED that Plaintiff's motion for summary judgment is GRANTED, and Defendants' motion for summary judgment is DENIED.

IT IS SO ORDERED.

---

**5.** The parties address whether Olin should pay a use tax on the property used at the government owned facility. A tax cannot be imposed on Olin because it resells the property to the U.S. The Missouri Supreme Court has held that when the legislature exempts sales from the sales tax, the legislature clearly evidences a desire to exempt the property from a use tax. *Southwestern Bell Telephone Company v. Morris,* 345 S.W.2d 62, 67 (Mo. banc 1961). "To hold otherwise would practically nullify the obvious legislative intent." *Id.* Thus, in exempting the vendors' sales to Olin from a sales tax, the Missouri legislature obviously intends to exempt the same sales from a use tax. *See* § 144.615(5), RSMo.1986, which exempts tangible personal property held for resale from taxes levied in §§ 144.600 to 144.745. To any extent Olin "holds" or has an interest in the tangible personal property, it is for the sole purpose of reselling the property to the U.S.