UNITED STATES of America, Appellee,

v.

Janette LOHMAN, Director of Revenue, State of Missouri; Missouri Department of Revenue; and the State of Missouri, Appellants.

No. 91–2206.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 10, 1994.

Decided April 15, 1994.

James R. McAdams, Jefferson City, MO, argued, for appellant.

David Carmack, Washington, DC, argued, for appellee.

Before RICHARD S. ARNOLD, Chief Circuit Judge; McMILLIAN, Circuit Judge; WELLFORD *, Senior Circuit Judge.

WELLFORD, Senior Circuit Judge.

This controversy involving Missouri sales and use taxes was the subject of this court's prior opinion reported at 975 F.2d 511 (1992).[1] Both parties filed timely petitions for certiorari regarding issues decided adversely to them, and the United States Supreme Court, on June 7, 1993, granted both these petitions, reciting this court's judgment, and remanding for further consideration in light of *United States v. Texas,* — U.S. —, 113 S.Ct. 1631, 123 L.Ed.2d 245 (1993), and *United States v. California,* — U.S. —, 113 S.Ct. 1784, 123 L.Ed.2d 528 (1993).[2] *See United States v. Melcher, Acting Director of Revenue,* — U.S. —, 113 S.Ct. 2925, 124 L.Ed.2d 676.

*California,* a unanimous opinion of the Supreme Court, affirmed a decision of the Ninth Circuit reported at 932 F.2d 1346 (9th

Cir.1991). A panel of this court had rejected the Ninth Circuit rationale of *California* in favor of *United States v. Broward County, Florida,* 901 F.2d 1005 (11th Cir.1990), which permitted the United States to proceed in a quasi-contractual action for money had and received for taxes paid on Florida real estate on which the government had constructed a building. In *California,* contrary to the holding in *Broward,* the Supreme Court concluded that the government could not, based on an implied contract, sue the state for money had and received based upon taxes *paid by its contractor.* Because the government attempted "to recover money it paid in reimbursement for state tax assessments against the contractor, even though the contractor already has challenged the assessment and accepted a resolution of its claims," the Supreme Court ruled that "a federal action is inappropriate here because the Government is in no better position than as a subrogee of its contractor." *California,* — U.S. —, 113 S.Ct. at 1788.[3]

As in *California,* Missouri taxed the contractor, Olin, not the United States. The government, just as it had done in *California,* reimbursed these funds to Olin.[4] These payments by the government to its contractor for taxes paid to the State of California, just as in this case to the State of Missouri, do "not make the Government's payments direct disbursements of federal funds to the state." *Id.* at —, 113 S.Ct. at 1789. *California* directs that "the Government cannot use the existence of its obligation to indemnify [Olin]" to base its cause of action. *Id.* at

* The HONORABLE HARRY W. WELLFORD, Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

1. For essential factual background of this case, see 975 F.2d 511 (1992), and *United States v. Benton,* 772 F.Supp. 453 (W.D.Mo.1990).

2. *Texas* involved the common law and statutory obligation of states to pay prejudgment interest on debts owed to the federal government. In view of our decision on Missouri's appeal, we find it unnecessary to decide the issue of prejudgment interest in this case.

3. The constitutionality of the tax in issue was not questioned in this case nor in *California.* However, in its decision, the Court noted that in *United States v. New Mexico,* 455 U.S. 720, 725,

102 S.Ct. 1373, 1378, 71 L.Ed.2d 580 (1982), where an " 'advanced funding' procedure" was used "to meet contractor costs," such procedure did not render the federal government immune from state taxes except for "direct taxes" (not those which merely have "an 'effect' on it"). *Id.* Thus, *New Mexico* held that it was "constitutionally irrelevant that the United States reimburse[s] all the contractor's expenditures, including those going to meet the tax." *New Mexico,* 455 U.S. at 734, 102 S.Ct. at 1382, quoted in *California,* — U.S. at —, 113 S.Ct. at 1788. We are operating under a similar "advanced funding" arrangement in this case, and thus, the constitutionality of the tax is not before this court.

4. We make no determination as to whether the government was a volunteer in making this reimbursement.

——, 113 S.Ct. at 1785.[5] Also, *California* mandates that we not imply, under the circumstances of this case, a contract between Missouri and the government, and requires us to hold that the government's action "for money had and received will not lie against the State" of Missouri. *Id.*

In June of 1989, (following Olin's May, 1988 claim for refund filed with the defendant for the above taxes paid from November, 1985 through March, 1988) the plaintiff filed this action seeking (1) declaratory judgment that Olin's contract purchases were not subject to Missouri sales/use tax, (2) an injunction restraining further collection of such taxes, and (3) a refund of the taxes paid by Olin and reimbursed by the United States. This action was filed about the same time that the *California* action was filed by the United States. The district court put the plaintiff's claim succinctly: "The U.S. contends Olin is exempt from sales and use taxes because it is the operator of a U.S. owned munitions plant and the property is purchased for resale to the United States Army." 772 F.Supp. at 455.

The district court held that the United States (1) had standing, (2) it could bring an action based upon quasi-contract (not based upon a "state law cause of action for refund of taxes"), and (3) "suffered direct pecuniary injury." *Id.* at 456. The district court further held that because of the way title passed to the United States, Olin's purchases were for resale under Missouri law, but it noticed this was a "question of first impression in the State of Missouri." *Id.* at 459.[6] We must reverse the district court's decision based on its rationale (particularly # 2 above stated), but we must also consider further the Supreme Court's decision in *California* as it relates to "indemnification" and consequent subrogation "to [Olin's] claims against the

State." *California,* —— U.S. at ——, 113 S.Ct. at 1790.

■■■ We must consider the question of subrogation discussed in *California.* (The subrogation rights of the United States were conceded in *California.*) The district court opinion made no mention of "subrogation" and in our previous opinion, we also made no reference to this doctrine. At best, plaintiff "stands in the place of one whose claim [it] has paid." *United States v. Munsey Trust Co.,* 332 U.S. 234, 242, 67 S.Ct. 1599, 1603, 91 L.Ed. 2022 (1947) (quoted in *California,* —— U.S. ——, 113 S.Ct. at 1790). Under the traditional rules, plaintiff would stand in the "shoes" of Olin, which has filed a state administrative claim for refund of the contested taxes. Subrogation is an equitable doctrine.[7] *Id.* at ——, 113 S.Ct. at 1791. *See, e.g., American Nursing Resources, Inc. v. Forrest T. Jones and Co.,* 812 S.W.2d 790, 795 (Mo.App.1991) ("The doctrine of subrogation ... is one of equity"); *Frago v. Sage,* 737 S.W.2d 482, 483 (Mo.App.1987) ("Subrogation compels the ultimate payment of a debt by one who, in justice, equity and good conscience, should pay it").

We note that the United States may not be without recourse in state proceedings. At oral argument, Missouri conceded that the United States might join or augment Olin's claim for refund in its pending state proceeding. Thus, the door is apparently open for the United States to pursue its claim in another forum.

We hold further that the government may proceed, if at all, only as a subrogee of Olin in the state proceedings. Olin's only remedy is before the state taxing authorities, with review available in the state courts if necessary. The United States is free to seek leave to become a party in this proceeding. Whether it is allowed to do so, and whether

---

5. In its original brief, the United States argued that *United States v. California,* 932 F.2d 1346, was "incorrectly decided." It further argued that the district court in *United States v. Benton,* 772 F.Supp. 453 (W.D.Mo.1990), had correctly held "no sale and use taxes due on Olin's purchases."

6. The district court also noted that "Olin admits it is a purchaser and designates the transfer of

title to the U.S." and the district court held that "title passage" occurred from third party vendors to the U.S. "at the time of delivery." *Id.* at 460, 461.

7. The Supreme Court did not decide in *California* whether the United States was subject to the state statute of limitations, but equitable considerations barred its action.

its status as a subrogee would be recognized by the state agency, are matters on which we express no opinion. They should be decided by the state agency in the first instance, and then by the state courts on review, if a review proceeding is filed. We are not making any judgment on the merits of the case before the Missouri administrative or judicial systems. Our holding is limited to any right to recover in this action *before this court* based on the equitable doctrines of subrogation and money had and received. While the United States may still retain the rights of a subrogee, it has a right to assert them before another tribunal in a pending proceeding.

Based on the principles of *California,* then, we find no enforceable right of the United States to proceed in this case against the defendants for the reasons stated. Our conclusion, we reiterate, does not prevent the United States from joining Olin in its ongoing refund claim against the State of Missouri. If it is determined that, under Missouri law, the taxes were in fact properly due and payable (we reach no conclusion on that question), the United States would have no claims for relief as asserted in this complaint. If Olin, on the other hand, were to prevail, then the United States may obtain the relief it seeks.

We **REVERSE** the decision of the district court, accordingly, and direct the dismissal of the cause of action, but without prejudice regarding the remedy sought in the Missouri administrative system or its courts.